ROGAN ET AL. *v.* COUNTY COMMISSIONERS OF CALVERT COUNTY

[No. 140, October Term, 1949.]

300

302

304

*Decided January 12, 1950.*

The cause was argued before MARBURY, C. J., DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Hall Hammond, Attorney General,* and *Ward B. Coe, Jr., Assistant Attorney General,* for the appellants.

*Richard W. Emory,* with whom was *David A. Harkness* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This appeal brings here for review a petition for *mandamus* filed by the State Tax Commission of Maryland in the Circuit Court for Calvert County to compel the County Commissioners of Calvert County (1) to give the notices required by statute, Code 1939, art. 81, sec. 24, as to all reassessments proposed by the Supervisor of Assessments for property in the first assess-

ment district of Calvert County, naming therein such date for hearing as will permit the properties to be reassessed for the taxable year 1950, (2) to hear and determine all protests by taxpayers which may be filed pursuant to the notices, (3) to review and reassess all assessable property in the district, (4) to follow the instructions of the State Tax Commission as to the plan and method of assessment, and (5) to enter the resulting reassessments on the assessment rolls of the County.

It was conceded that Russell H. Owings, Supervisor of Assessments for Calvert County, reviewed all the properties in the first district prior to October 1, 1949, and recommended reassessments thereon. The County Commissioners, however, after sending notices of the proposed reassessments to some of the taxpayers, and later notifying a number of the recipients to disregard them, notified the State Tax Commission that they would not send out any of the remaining notices and would not place any of the proposed reassessments on the assessment rolls of the County for the reason that the Supervisor, acting upon instructions of the Commission, had used 1944 sales prices, building costs and rents as a standard of value. It was claimed that such valuations would violate the constitutional rights of the taxpayers in the first district until reassessments were made in the second, third, fourth and fifth districts, where properties were assessed according to 1941-1942 market prices.

The Maryland statute provides that in case any Board of County Commissioners shall neglect or fail to follow the instructions of the State Tax Commission, either as to the method or plan of assessment, the Commission may institute *mandamus* proceedings against the Board so refusing, and a *mandamus* shall issue compelling the Board to perform the statutory duties. Code Supp. 1947, art. 81, sec. 184. The trial judge, however, held that the instructions issued by the Commission, upon which the proposed reassessments were made, violated constitutional rights, and therefore the County Com-

missioners were justified in refusing "to participate in making assessments which will be unlawful." He accordingly dismissed the petition for *mandamus* and entered judgment in favor of defendants for costs. From that judgment the Commission appealed to this Court.

In the City of Baltimore there has been continuous assessment since 1900, when the Legislature made it the duty of the Appeal Tax Court to make general revision of all the assessable property in the City once in every five years. Laws of 1900, ch. 347. But prior to 1914 assessments in the Counties of Maryland were reviewed only in pursuance of Special Acts of the Legislature. The assessment system in the Counties was glaringly discriminatory. Property was assessed at far less than its actual value, and there was no centralized control or uniformity of method. In 1914 the Legislature, acting upon recommendations of the Commission for Revision of the Taxation System, which was appointed by Governor Goldsborough in 1912, Laws of 1912, ch. 779, created the State Tax Commission to provide for the equalization of assessments throughout the State by enforcing a continuing method of assessment and requiring that all property in the State be reviewed for assessment at least once in every five years. Laws of 1914, ch. 841. This legislation, however, did not contemplate rotation in reassessments. Moreover, the reform sought by it was impeded by a number of Special Acts postponing reassessments.

In 1935 the Legislature authorized the State Tax Commission to enforce and execute a continuing method of assessment, and to require that all property in the State be reviewed and assessed at least once in every five years. This Act declared that the Commission was not required to order a general assessment of all property, or all property of any class, in any County at least once in every five years, but could order and enforce reassessments annually by classes or districts. Laws of 1935, ch. 468, Code Supp. 1935, art. 81, sec. 166. This Act, which was the first in Maryland expressly authorizing rotation

in assessments, demanded that all assessable property in every County be reviewed at least once in every five years, but did not make the rotation method mandatory. The Legislature also authorized nine Counties in 1937 and fourteen Counties in 1939 to make general reassessments. In 1937 the Legislature authorized the County Commissioners of Frederick County to appoint two assessors who, with the Supervisor of Assessments, were to constitute a Board of Assessment to make a general review of all assessable property in the County once in every five years. Laws of 1937, ch. 345. In 1939 the Legislature authorized the continuous assessment plan for Anne Arundel and Harford Counties. Laws of 1939, chs. 185, 206.

In 1941 the Maryland Tax Revision Commission, appointed by Governor O'Conor in 1939, Laws of 1939, ch. 262, reported that many assessors in the Counties were still assessing property at far less than its value and there was a general failure to apply common standards in determining value; that many of the assessors lacked the training or experience needed to cope with the problems arising from growth of population and changing conditions; and that general reassessments made after long postponements were disproportionately expensive compared with continuous reassessments. The Legislature, carrying out the recommendations of the Tax Revision Commission, directed the State Tax Commission to enforce and execute a continuing method of assessment so that all assessable property in every County and in Baltimore City shall be thoroughly reviewed at least once in every five years. The Act then provided: "It shall be the duty of the Commission, after consultation with the local assessing authorities, to establish five districts or five classes of property in each county and in Baltimore City, and to require that the property in one of the said districts or classes be reviewed and reassessed each year in rotation." Laws of 1943, ch. 717, Code Supp. 1947, art. 81, sec. 175(8).

In compliance with this statute, the Commission established five districts in Baltimore City and five districts in each County of the State except Washington County, where the Commission established five classes of property. The first district in Calvert County, as in 21 other Counties of the State, was reviewed in 1944, the second district in 1945, the third district in 1946, the fourth district in 1947, and the fifth district in 1948. Thus, during the five year period from 1944 to 1948, all assessable property in the State was reviewed. In view of the requirement of the law that the property in one district shall be reviewed and reassessed each year in rotation, the Commission ordered that the properties in the first district of Calvert County be reviewed again in 1949 for the taxable year 1950.

It has long been recognized in this State that the Legislature has the power to divide any County into taxing districts, and that each County or taxing district can have its own rate of taxation without contravening Article 15 of the Maryland Declaration of Rights. *Daly v. Morgan,* 69 Md. 460, 16 A. 287, 1 L. R. A. 757. This Court has held that the provision in the amendment to Article 15 of the Declaration of Rights, made by Chapter 390 of the Laws of 1914, ratified in November, 1915, declaring that all taxes to be levied by the State for the support of the State Government, and by the Counties and by the City of Baltimore for their respective purposes, shall be uniform as to land within the taxing district, refers to levies of taxes and not to assessments. *Leser v. Lowenstein,* 129 Md. 244, 250, 98 A. 712.

The purpose of the equal protection clause of the Fourteenth Amendment of the Constitution of the United States is to protect every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by the provisions of a statute or by improper enforcement of a statute. Intentional and systematic undervaluation by assessors of other taxable property in the same class violates the constitutional right of a person taxed upon the full value of his prop-

erty. However, mere errors of judgment on the part of State or County officials in making assessments will not support a claim of such discrimination. There must be something which in effect amounts to an intentional violation of the essential principle of practical uniformity. The good faith of such officials and the validity of their actions will be presumed. When their actions are assailed, the burden of proof is upon the complaining party. *Sunday Lake Iron Co. v. Township of Wakefield,* 247 U. S. 350, 38 S. Ct. 495, 62 L. Ed. 1154; *Sioux City Bridge Co. v. Dakota County, Nebraska,* 260 U. S. 441, 43 S. Ct. 190, 67 L. Ed. 340, 28 A. L. R. 979.

It is not an infringement of the equal protection clause of the Fourteenth Amendment for a statute to authorize the assessment of the same classes of property in different years, or the assessment of different classes of property in different years. In *Thomas v. Gay,* 169 U. S. 264, 18 S. Ct. 340, 346, 42 L. Ed. 740, where the United States Supreme Court observed that it is not unusual in this country for a statute to authorize such a method of assessment, Justice Shiras said: "Such matters of regulation must be supposed to be within the power of the state or territory, and to have their reasons in special facts known to the legislature."

We specifically hold that the method of assessment prescribed by the Maryland statute, by which a County is divided into five districts, and the assessments are reviewed in one district each year, so that all assessments in the County will be reviewed during the period of five years, does not violate the Fourteenth Amendment of the Federal Constitution, provided that there is no intentional and arbitrary discrimination. The fact that the review by rotation is merely partial and temporary tends to show lack of intention to discriminate. When a test was made of a similar system in one of the Counties of Alabama, the Court held that, since there was no intention on the part of the board of equalization to discriminate, the procedure did not deprive the taxpayers

of equal protection of the law. *Hamilton v. Adkins,* 250 Ala. 557, 35 So. 2d 183.

We find no evidence in this case to establish that the State Tax Commission is chargeable with intentional and arbitrary discrimination. For more than thirty-five years the Commission has been charged with the duty of supervising the assessment of all property in the State, so that all taxable property will be entered upon the assessment rolls and equalized among the taxpayers. Code 1939, art. 81, sec. 175(4). The Commission has been endeavoring in difficult circumstances to carry out the duties imposed upon it by the Legislature. It is recognized that perfect uniformity in assessments is impossible. If any temporary inequalities result in the assessments in Calvert County, or in any other Counties of the State, the State Tax Commission can continue to make diligent efforts to rectify them.

The Maryland law requires that all property shall be assessed "at the full cash value thereof on the date of finality." Code 1939, art. 81, sec. 11.' Ordinarily the cash value of property is the market value. *Schley v. Montgomery County Com'rs.,* 106 Md. 407, 410, 67 A. 250. But, as Justice White said in *San Francisco National Bank v. Dodge,* 197 U. S. 70, 25 S. Ct. 384, 386, 49 L. Ed. 669, the market value of property is the value a willing purchaser will pay for it to a willing seller in open market, eliminating exceptional and extraordinary conditions giving the property temporarily an abnormal value. The Court cannot rule as matter of law that assessing authorities must be guided entirely by current market prices in making the assessments, regardless of how "thin" the "spot market" may be or how much it may be affected by conditions believed to be temporary and abnormal.

It goes without saying that when the law requires one-fifth of all property to be assessed each year "at the full cash value thereof on the date of finality," the State Tax Commission cannot ignore the law and order property to be assessed (1) at its full cash value five years

ago or (2) in five successive years at its full cash value in the first year. The Commission denies that it has done either of these things. It has only proposed a guide or index to 1949 value, and has not yet proposed anything as to years subsequent to 1949. The legality of assessments for the years prior to 1950 is not before us. Nor is any assessment for 1950 before us. The Commission has merely proposed tentative assessments for 1950. At this stage we have no authority to pass upon the 1950 assessments, and even if we had we have no sufficient record to pass upon the legality of the method of determining 1949 value. The duty of the County Commissioners to follow the Commission's instructions as to the method or plan of assessment does not include the power of the Commission to require, or the duty of the County Commissioners to make, any departure from the statutory requirement to assess property "at the full cash value thereof on the date of finality." In the present case the County Commissioners do not complain that valuation has not been increased to 1949 value, but merely that valuations in the other four districts have not yet been increased at all. In making this contention they ignore and defy the statutory requirement of annual revision of one district at a time.

The task of raising the assessments of properties to their full cash value was made more difficult by conditions produced by the Second World War, which caused sales prices, building costs and rents to rise rapidly in 1945, 1946, 1947 and 1948, except where controlled by the Government. The Commission believed that the inflated sales prices, caused by forced purchases under abnormal conditions, were temporary and not a true index of value. The Commission accordingly instructed all Supervisors in Maryland to use 1941-1942 market prices as a guide or index to value in making reassessments in 1944 for the year 1945. Likewise in 1945, 1946, 1947 and 1948 the Commission instructed the Supervisors to continue to reassess in accordance with the same guide or index, prewar market prices. Accordingly the prop-

erties in the second, third, fourth and fifth assessment districts of Calvert County were reassessed for five years by the same guide or index, pre-war market prices. In 1949 sales prices began to decline, but the Commission believed that, while forced purchases were still affecting prices to a considerable degree, the sales prices in 1944 would be a fair guide or index to value in 1949. It therefore instructed all Supervisors to use the 1944 market prices as a guide or index to value in making the reassessments in 1949. We accept the rule, as adopted in other States, that the assessment of the property of others at a lower proportion of its value than that of a complaining taxpayer, which is not assessed at more than its fair cash value, does not make the tax on the latter invalid, unless the assessment was fraudulently made. *Doty Lumber & Shingle Co. v. Lewis County,* 60 Wash. 428, 111 P. 562, Ann. Cas. 1912B, 870. Likewise it was held in *Wild Goose Country Club v. Butte County,* 60 Cal. App. 339, 212 P. 711, that the failure of the board of equalization to raise the assessment of other properties, as it did on the plaintiff's property, did not constitute fraudulent discrimination on the part of the board in view of the fact that the time was too short to make a review for the raising of assessments on the other properties.

It is true that the State Tax Commission of Maryland has the power to order and enforce at any time a review and reassessment of all property in any County or district, if the existing assessments are found to be greater or less than the assessments on other properties possessing similar and comparable values. Laws of 1943, ch. 717, Code Supp. 1947, art. 81, sec. 175(8). It was conceded in this case that all the property in Calvert County can be reassessed in an entire year by employment of three less experienced assessors in addition to the Supervisor of Assessments, who at present is the only assessor in the County. However, the present policy of the law of Maryland is that general reassessments can be made better in rotation than throughout an entire County in

one year. And it was conceded that after the proposed reassessments were completed by Supervisor Owings on October 1, 1949, it would have been an impossibility to review and reassess all the property in the entire County within the time remaining before January 1, 1950, the date of finality.

We have construed the statutes as recognizing the principle that a taxpayer has the legal right to complain of under-assessment of property owned by other taxpayers. *Board of Com'rs. of Anne Arundel County v. Buch,* 190 Md. 394, 58 A. 2d 672, 5 A. L. R. 2d 509. But this Court cannot rule in advance of assessment and orderly review thereof, by appeal from the assessment to the State Tax Commission and then to the courts, that the Supervisor of Assessments shall follow some particular formula for determining the "full cash value" of property. It is not the function of the Court of Appeals to formulate instructions for the Supervisors of Assessments to guide them in making assessments. It is the duty of the State Tax Commission to formulate from time to time a uniform plan for the assessment of property, which shall be followed strictly by the County Commissioners and by all County assessors for all reassessments. Code 1939, art. 81, sec. 182. The statute provides that the Supervisor of Assessments shall recommend assessments to the County Commissioners, Code 1939, art. 81, sec. 177, but, except as in the statute otherwise provided, all property, real or personal subject to ordinary taxation, shall be valued and assessed for purposes of State and County taxation by the County Commissioners. Code Supp. 1947, art. 81, sec. 10. In case the date submitted by the Supervisor of Assessments is not satisfactory either to the State Tax Commission or the County Commissioners, either may obtain additional data, and in case the assessment so determined upon is not satisfactory, the Commission or the County Commissioners shall order a new valuation. Code 1939, art. 81, sec. 177. But it shall be unlawful for the County Commissioners to decrease the amount of an assessment

after the date of finality for any year, unless a protest against the assessment was duly filed before the date of finality. Code Supp. 1947, art. 81, sec. 185.

The statute further provides that any taxpayer may demand a hearing before the County Commissioners as to the assessment of any property for the next ensuing year. In case of any such hearing, any party in interest may file data and information bearing thereon, without regard to the technical rules of evidence. Code 1939, art. 81, sec. 190. Any taxpayer claiming to be aggrieved because of any assessment by the County Commissioners may appeal therefrom to the State Tax Commission. The taxpayer may then appeal from the decision of the Commission on questions of law to the Circuit Court of any County, or the Baltimore City Court of Baltimore City, in which his property may be situated, or in which the taxpayer may reside or be taxable in respect thereto, or in which the office of the Commission may be situated. The statute gives a further right of appeal from any decision of the Circuit Court of the County, or the Baltimore City Court, to the Court of Appeals. Code Supp. 1947, art. 81, secs. 191, 194. In short, review of any assessment by this Court is the last step, not the first, in the procedure of assessment.

As the Legislature has prescribed the manner in which a taxpayer may contest an assessment, first by demanding a hearing before the County Commissioners, then by appeal to the State Tax Commission, then to the appropriate trial Court, and finally to the Court of Appeals, we find no reason to sustain the action of the trial judge in dismissing the petition for *mandamus*. The County Commissioners should be commanded to perform the statutory duties as prayed in the petition.

*Judgment reversed and case remanded, with costs.*