**UNITED STATES of America, Petitioner-Plaintiff,**

v.

**50.8 ACRES OF LAND, MORE OR LESS, SITUATE IN the TOWN OF HEMPSTEAD, County of Nassau, State of NEW YORK, and Meadowbrook Club, et al., Defendants.**

**No. C. P. 97.**

United States District Court
E. D. New York.

March 11, 1957.

On Motion for Additional Findings of Fact April 4, 1957.

Harry T. Dolan, Sp. Asst. to the Atty.
Gen., for petitioner-plaintiff.

Corner, Weisbrod, Froeb & Charles, Brooklyn, N. Y., for Meadowbrook Club, defendant, John H. Finn, New York City, and Frederick W. Weisbrod, William C. Mattison, Brooklyn, N. Y., and Edgar G. Brisach, New York City, of counsel.

INCH, Chief Judge.

This action was commenced on October 18, 1954. The Government's complaint sought to acquire approximately 70.5 acres of land in the Town of Hempstead, County of Nassau. The land was unimproved and formed a part of the old Meadowbrook Club, devoted for many years to golf, polo and recreational purposes. On September 20, 1955, the complaint was amended to eliminate approximately 20 acres, and on September 20, 1955, a Declaration of Taking, covering the land retained, was filed. It was agreed at the trial that the correct area taken was 48.8 acres, and that the land excluded consisted of two parcels of 12.5 and 7 acres respectively.

The questions presented for determination are two: (1) The fair value and just compensation to be paid for the land taken, and (2) the just compensation for the use and possession of the lands excluded from the original proposed taking for the period of possession from October 18, 1954 to September 20, 1955.

On March 7, 1957 I personally visited the property in question, accompanied by representatives of the owner and the Government. I am familiar with the property, as for many years I have lived in an adjoining county and frequently visited and viewed the area in question when it was the scene of many prominent polo contests, and later it was the scene of the well known Meadowbrook Golf Club, at which many prominent golf tournaments occurred. I am also not unaware of the growth of this part of Long Island with the usual accompaniment of business houses, accompanied by the presence of zoning for residential purposes, and the constant effort, sometimes unsuccessful, to obtain a change of such zoning.

The land involved was located south of Stewart Avenue and adjoined the Mitchel Air Force Base of the Government, which for many years has been an active airfield of the military. The land taken was irregular in shape, with no street or road frontage, as was the 7 acres excluded from the taking. The remaining 12.5 acres used temporarily, but not ultimately taken, fronted on Stewart Avenue. A portion (approximately 200 acres) of the adjoining land forming a part of the Meadowbrook Club, had been sold to The State of New York during the years 1953 and 1954 at the rate of $6,000 per acre, and in part used for the construction of the Jones Beach State Parkway. Mitchel Air Force Base was an active Government airfield, and the lands taken were located within 750 feet of one of its principal runways.

As in all such cases, the burden of proof rested upon the landowner. Westchester County Park Commission v. United States, 2 Cir., 1944, 143 F.2d 688, certiorari denied 323 U.S. 726, 65 S.Ct. 59, 89 L.Ed. 583, and the compensation is to be fixed as of the date of possession on October 18, 1954. Anderson v. United States, 5 Cir., 1950, 179 F.2d 281; 11,000 Acres, etc. v. United States, 5 Cir., 1945, 152 F.2d 566, certiorari denied 328 U.S. 835, 66 S.Ct. 980, 90 L.Ed. 1611.

Just compensation and fair market value are usually synonymous in eminent domain cases. United States v. Miller, 1943, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336. Although market value should be based upon facts having a rational foundation, Westchester County Park Commission v. United States, supra, there can be no doubt that its determination involves some speculative factors, and in the absence of adequate sales of comparable properties, somewhat of an "educated guess". Westchester County Park Commission v. United States, supra; United States v. Miller, supra. But, in any event, market value as between a willing buyer and seller is

the accepted criteria and measure of just compensation.

As usual in such cases, the experts were in sharp and irreconcilable conflict in their opinions of value. To a large degree, this conflict stems from the hypothesis or assumptions upon which the opinions were based. The owner's real estate appraiser based his value upon industrial use, whereas the land for many years and at the date of taking, was zoned for residential use. The Government's witness based his opinion upon residential use, which conformed to existing zoning.

The evidence indicated that shortly prior to the taking, an application for a change of zoning had been made by the owner from residential to industrial. The application was approved by one adjoining landowner,—Jones Beach State Parkway (Authority), and opposed by another,—the Government. The change was not effected until approximately two years after the taking and after the Government's opposition was withdrawn. The Government's opposition was based upon flight hazards which might be created, as well as the proposed acquisition of a part of the lands involved in the planned change.

The Government's witness considered about eight sales of nearby lands with similar zoning, ranging from $6,000 to $11,500 per acre. The owner relied upon a large number of sales of land purchased for industrial use and largely zoned for industrial use, or where the sales were contingent upon a change to such use. These sales generally indicated units ranging from $11,000 to $15,500 per acre.

It appears that the owner, at the time of taking and at the time of its petition for a change of zoning, had pending from a large developer a bona fide offer to purchase its remaining lands of approximately 72.8 acres for upwards of $1,000,000 or approximately $13,736 per acre average, but including two parcels of 12.5 acres and 4.5 acres with extensive frontage on Stewart Avenue and Merrick Avenue, respectively, whereas the lands taken involved no street or road frontage.

This sale was apparently contingent upon a change to industrial zoning and was never consummated. The owner contends that the land taken and used should be valued for industrial use and the Government contends that the value must be based upon the existing zoning at the time of taking.

■ It was conceded that at the time of taking, the lands here involved were zoned and restricted for residential use and that there was pending an application for a change in zoning to permit industrial use, which was the subject of opposition by the Government, as an adjoining property owner. It further appears that the change from residential to industrial zoning did not occur until November, 1956. While the existing zoning restrictions were a proper and important factor for the appraisers to consider, it was also proper to consider the reasonable probability of a change in fixing their estimates of valuation. To what extent the possibility or probability of a change would affect the value as of the date of taking is dependent upon the degree of probability, the imminence of the change, the effectiveness of the opposition, and other factors which are largely speculative and conjectural.

To appraise the land as though the change had occurred, when in fact it had not, would be to totally disregard restrictions upon use, which had been imposed by competent authority for many years, and to permit the owner to receive compensation based on a prohibited use. United States v. Delano Park Homes, 2 Cir., 1944, 146 F.2d 473, 474; Westchester Park Commission v. United States, supra. However, to deny the owner any increment in value attributable to the probability of a favorable change in zoning in the reasonably near future, would, likewise, be unjust. To evaluate this probability of change, as affecting market value, and balance it as against conditions as they existed and to visualize the effect upon the minds of buyers faced with this situation, requires considerable guesswork and concerning which the experts ventured no opinions.

The value claimed by the owner is based upon use for industrial purposes, as though a change had become an accomplished fact as of the date of taking. The Government's witness appraised the land as restricted for residential use, but ventured the opinion that a buyer might be found who would pay a little more for the possibility of being successful in obtaining a change.

■ I have considered in fixing just compensation the zoning restrictions on use as they existed and the possibility or probability of a change to industrial use in the reasonably near future, in the light of all the testimony presented.

■ Considering all of the evidence, and after a view and inspection of the property involved, I conclude, and fix the fair value and just compensation which should be paid by the Government to be as follows:

(A) Fee Value—48.8 acres at $10,000. per acre .........$488,000.00

(B) Use and Occupancy of Parts Excluded

12.5 acres at $12,000. per acre .............$150,000.
7 acres at $10,000. per acre .............  70,000.

Total value .......... $220,000.

Compensation for use and occupancy ......  13,200. p.a.
(6% per annum on value of $220,000.)
Prorated for period Oct. 18, 1954 to
Sept. 20, 1955—($13,200. x .92826—
portion of year occupied) ................  12,253.

Apportioned taxes, based upon actual
assessment of two parcels occupied ........   1,339.

Total compensation for use and occupancy
of two parcels (12.5 and 7 acres respectively) ........................................  13,592.00

(C) Severance Damage to 7-Acre Remaining Parcel
Denied and Disallowed.

(D) Total Compensation for Fee Taking and Use and
Occupancy of Portions Excluded from Taking .......$501,592.00
Settle Order.

### On Motion for Additional Findings of Fact

The defendant, Meadowbrook Club, has made a motion for an order making additional Findings of Fact, as detailed in its motion, and to include such additional Findings of Fact in the Court's decision fixing just compensation, dated March 11, 1957. The Government opposes this motion as unnecessary and superfluous.

■■ This is a condemnation action tried to the Court, and like most of such actions, the sole issue was the value of and just compensation for the property appropriated. It has been customary for many years in the trial of this type of litigation, whether tried to the Court, commissioners of appraisal, or jury, to receive a great mass of evidence which ordinarily in other types of litigation would be excluded as irrelevant, immaterial or hearsay. The courts have never adhered to the strict rules of evidence which ordinarily obtain in other litigation. United States v. 80.46 Acres, D.C.W.D.N.Y.1944, 59 F.Supp. 876, 877, 878, affirmed sub nom. Phillips v. United States, 2 Cir., 1945, 148 F.2d 714; United States v. 5,139.5 Acres, 4 Cir., 1952, 200 F.2d 659; United States v. Ham, 8 Cir., 1951, 187 F.2d 265; H. & H. Supply Co. v. United States, 8 Cir., 1952, 194 F.2d 553; International Paper Co. v. United States, 5 Cir., 1955, 227 F.2d 201. This procedure was followed in this action. At the con-

clusion of the trial, both sides were requested to submit proposed Findings of Fact which the Court might find helpful and serve to expedite a review of the voluminous testimony and exhibits. From such material so submitted, as well as the briefs submitted and the evidence, I made and recited in my decision of March 11, 1957 such Findings of Fact and Conclusions of Law as I considered relevant, pertinent and material to the proper award of compensation required to be paid for the property taken. These were in a narrative form and considered adequate for all purposes, since there were few controversial questions of fact presented. United States v. Certain parcels of land in the City of Philadelphia, 3 Cir., 1954, 215 F.2d 140, 145. Defendant's voluminous proposed Findings of Fact deal largely with inconsequential and unimportant phases of its proof and which were not considered material to the decision of the issue, except as stated therein.

During the course of the trial, the defendant sought to establish by its proof that the land was not suitable and adaptable for residential homesite development because of its proximity to plaintiff's airfield and runways and also to Roosevelt Raceway, which were considered adverse influences. While these factors might adversely influence the value of the land for such use, they did not preclude it, and in view of the acknowledged scarcity of land in this area for subdivision and development purposes, it would undoubtedly have found a ready market for such use at prevailing market prices, as indicated by the plaintiff's proof.

It is further observed that while the possibility or ultimate probability of a change in zoning to industrial use might have influenced the price paid on the date of taking, it is inconceivable that the price would be the equivalent of that paid where the proposed use was not contingent upon a future speculative event.

Except as above noted, I decline to add to or enlarge upon my previous decision and defendant's motion is denied.

Settle order.