# HUTCHISON *v.* BALTIMORE GAS & ELECTRIC CO.

[No. 93, September Term, 1965.]

330

*Decided February 8, 1966.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, BARNES and MCWILLIAMS, JJ.

*Charles E. Hogg,* with whom was *Charles H. Burton* on the brief, for appellant.

*John L. Clark,* with whom were *Wilmer H. Driver, William Baxter* and *Paul S. Clarkson* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

Baltimore Gas and Electric Company, appellee, filed a petition in the Circuit Court for Howard County to acquire by condemnation from Mary Louise Hutchison, appellant, land for an overhead transmission line right-of-way 66½ feet wide and 5,723 feet in length, the total fee simple taking comprising some 8.7 acres. The condemnor also sought to acquire an easement 75 feet wide adjacent to the fee simple strip for the purpose of trimming, cutting and removing any trees on the same. The case was tried before a jury, Judge Macgill presiding, for the purpose of determining the amount of damages caused to the property owner by the taking, and the jurors returned a verdict upon the inquisition in the amount of $34,000. The sole question to be resolved on this appeal is whether the trial judge was correct in striking, and instructing the jury to disregard, the testimony of Campbell V. Helfrich, one of the appellant's expert witnesses.

The property of the appellant here involved is an irregularly shaped tract consisting of some 285 acres running from Ste-

phens Road on the west and thence in a generally southeast-
erly direction to the Baltimore-Washington Boulevard on the
east, where her property borders on the Boulevard for some 800
feet. The witness Helfrich in valuing the subject property and
in fixing the damages due to the condemnation used what he
termed the "before and after" method. For this purpose he
divided the Hutchison tract into several sections and added the
respective values attributed to each so as to arrive at a total
value before the taking; he then estimated the value of each
section after the taking, totaling them; and the difference be-
tween the two aggregates constituted his estimated damages.
To this end, he segregated a portion of the tract beginning with
the 800 feet fronting on the Boulevard and extending westerly
back along both the northeasterly and southerly sides of the
property for a distance of 1,300 feet so as to form a quadri-
lateral, containing approximately 25.7 acres. He testified that he
treated this entire 25.7 quadrilateral portion of the property as
though it were zoned M-1 (Light Manufacturing) and valued
the land lying therein at $7,500 per acre. In fact, about 10 of
these 25.7 acres were then zoned R-20 (Residential-single-fam-
ily dwellings). The reason which Helfrich gave for so treat-
ing the property was that the property owned by third parties,
lying to the north and to the south of the above mentioned 10
acres of R-20, had already been zoned M-1 and he thought it
logical that the intervening strip owned by Mrs. Hutchison
should likewise be so zoned. In response to a question pro-
pounded by Judge Macgill, the witness admitted that he had as-
signed a M-1 value to that portion of the 25.7 quadrilateral
which was zoned R-20. Later Helfrich testified that a buyer
would naturally pay more for the 10 acres if it were already
zoned M-1 than he would if he were faced with the risk of
changing the zoning to M-1, but he candidly stated that he
could not estimate how much more a potential buyer of the
property would pay for the more valuable M-1 zoning. Finding
no consequential damages to this 25.7-acre quadrilateral sec-
tion due to the adjacent easement strip, Helfrich testified that
the total taking within this section would be 0.93 acres, and
damages (at $7,500 per acre) consequent to the taking to be
$6,975. Within the other sections he estimated damages to be

some $55,320, for a total of $62,295. At the conclusion of the direct examination of Helfrich, the trial judge granted the condemnor's motion to strike his testimony, on the ground that the witness had treated certain portions of the tract as though it had already been zoned to a more valuable classification, when in fact that rezoning was only a possibility and thus his valuation of the land was too high by some amount which the witness himself could not ascertain.

The appellee produced two expert witnesses, John A. Magee and William B. Stromberg, who testified that the damages to Mrs. Hutchison's property would be $26,800 and $26,414, respectively. Besides Helfrich, the appellant property owner produced Marion Cox, another expert real estate appraiser, who testified that the damages to the property would be $66,160, and Bernard Willemain, an expert in the field of planning and zoning, who testified that the 10 acres lying within the 25.7 acres quadrilateral should be reclassified from R-20 to M-1 and that in his opinion such a rezoning would be allowed by the zoning authorities and upheld by the courts.

We think the trial judge was correct in excluding the testimony of the witness Helfrich. As pointed out by the appellant, it is permissible for an appraiser, when valuing property in a condemnation case, to consider the probability of a tract being rezoned to a higher or lower classification in the reasonably near future. *Bergeman v. State Roads Comm.*, 218 Md. 137, 146 A. 2d 48; *Lustine v. State Roads Comm.*, 217 Md. 274, 142 A. 2d 566; *State Roads Comm. v. Warriner*, 211 Md. 480, 128 A. 2d 248. However, it is manifestly improper to allow a real estate appraiser in such a case to value property as if it were in fact already zoned to the higher classification. The reason for this was suggested in Mr. Helfrich's own testimony, *i.e.*, change in zoning is a risky and uncertain matter and a purchaser in the open market would certainly not pay the same amount for land which has the possibility of being rezoned to a higher (more valuable) classification than he would be willing to pay if the change in zoning had already been accomplished. The language used in 4 Nichols, *Eminent Domain* (3d Ed.), Section 12.322 [1], at 238 and 245 is apposite here:

"Where * * * there is a possibility or probability that the zoning restriction may in the near future be repealed or amended so as to permit the use in question, such likelihood may be considered if the prospect of such repeal or amendment is sufficiently likely as to have an appreciable influence upon present market value. * * *

*"An important caveat to remember in applying the rule is that the property must not be evaluated as though the rezoning were already an accomplished fact.* It must be evaluated under the restrictions of the existing zoning and consideration given to the impact upon market value of the likelihood of a change in zoning. * * *." Citing *United States v. Meadow Brook Club* (C. A. 2, 1958), 259 F. 2d 41, 44, *cert. den.,* 358 U. S. 921, 3 L.Ed.2d 239 (affirming *United States v. 50.8 Acres of Land, Etc.* (U. S. D. C., E. D. N. Y., 1957), 149 F. Supp. 749) ; *State v. Gorga* (1958), 26 N. J. 113, 138 A. 2d 833; *Barnes v. North Carolina State Highway Commission* (1958), 250 N. C. 378, 109 S. E. 2d 219; *State v. McMinn* (1960), 88 Ariz. 261, 355 P. 2d 900. (Emphasis added.)

In her brief and in oral argument before us, the appellant urges that even if Mr. Helfrich's testimony may have been improper in part, the jury nonetheless should have been allowed to consider the remainder of his testimony in conjunction with the testimony of Marion Cox, the other expert appraiser produced by her. However, such a combination of testimony is more easily suggested than accomplished. For instance, in the present case witnesses Helfrich and Cox arrived at different figures for total acreage within the quadrilateral, segregated the land into sections of varying acreage, and placed different valuations on each acre within those sections. But even assuming without deciding that the trial judge could have practically allowed certain portions of Helfrich's testimony to be considered by the jury in conjunction with that of Cox, we do not think that the appellant has shown prejudice, sufficient to justify a reversal, by his failure to so allow. In Maryland, as elsewhere, ordinarily no

reversible error results from the improper exclusion or striking out of evidence which is otherwise admitted and of which the jury has had the benefit. This rule is applicable in condemnation cases where the testimony of one witness has been stricken, but where there is other testimony to the same effect adduced by the same party which has been admitted. *Ruud v. United States* (C. A. 9, 1958), 256 F. 2d 460, cert. den. 358 U. S. 817, 3 L. Ed. 2d 59; *Forest Preserve Dist. of Cook County v. Krol* (1957), 12 Ill. 2d 139, 145 N. E. 2d 599; *Ham, Yearsley & Ryrie v. Northern Pac. Ry. Co.* (1921), 115 Wash. 286, 197 P. 43. The testimony of Helfrich was only cumulative in nature, since the appellant's witness Cox, while giving a slightly higher valuation of the property than Helfrich, did base his valuation on substantially the same sales in the vicinity which Helfrich had used as the basis of his appraisal. The case of *Marder v. M. & C. C. of Balto.* (1963), 232 Md. 299, 192 A. 2d 512, cited by the appellant is thus inapposite as to a showing of prejudice here because in *Marder* the exigencies of the case were such that the property owner was left with no expert witness as to value, as against the condemnor's two such witnesses. A situation somewhat analogous to the instant case was presented in *Ruud, supra,* where the trial court sustained an objection to the testimony of two expert witnesses for the property owners on the ground that they were not qualified to appraise the property, inasmuch as they were farmers and not professional realtors. The United States Court of Appeals for the 9th Circuit held that the exclusion of testimony as to value by these two witnesses was error, but held the error to be harmless since their evidence would have been merely cumulative to that adduced by other expert witnesses. In the instant case the jury returned a verdict ($34,000) which was substantially higher than the amount testified to by either of the witnesses for the condemnor ($26,800 and $26,414), indicating that considerable weight must have been given to the testimony of the appellant's one remaining expert appraiser, Cox.

*Judgment affirmed, costs on this appeal to be paid by appellant.*