# BURTON, ET AL. *v.* STATE ROADS COMMISSION OF MARYLAND

[No. 397, September Term, 1967.]

*Decided November 14, 1968.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, FINAN, SINGLEY and SMITH, JJ.

*John A. Buchanan,* with whom were *David A. McNamee* and *Beatty & McNamee* on the brief, for appellants.

*Charles J. Sullivan, Jr., Special Attorney,* with whom were *Francis B. Burch, Attorney General,* and *Joseph D. Buscher, Special Assistant Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

The State Roads Commission condemned certain land of the appellants located at the intersection of Riverdale Road and Route 450 in Prince George's County. Appellants (Burton) complain in this Court on three grounds: (1) the exclusion of Burton's expert witnesses, an appraiser and a civil engineer, from the court room under Md. Rule 546; (2) the refusal of the trial court to strike testimony of the State's real estate appraisal expert where he reduced by 50% his evaluation figure for the property being taken zoned rural residential because of the zoning classification; and (3) the refusal of the trial court to permit an expert engineering witness to testify as to the resulting damages to the property taken.

Burton relies on our decision in *State Roads Comm'n v. Creswell,* 235 Md. 220, 201 A. 2d 328 (1964). In that case the trial court declined to exclude from the court room certain expert witnesses after being assured by counsel that their testimony would be based in part upon the testimony to be given by engineers in the case.

Md. Rule 546 makes mandatory the sequestration of witnesses upon request of a party except for an expert witness "who is to render an opinion based on the testimony given at the trial". In *Creswell, supra,* we said:

> "Rule 546 was adopted in September 1961 as the civil counterpart of the sequestration rule for criminal causes, Rule 753, which has been construed by us on several occasions. In *Bulluck v. State,* 219 Md. 67, 148 A. 2d 433, we stated the purpose of the rule (then Rule 737) to be to prevent witnesses from being 'taught or prompted' by each other's testimony. We have held that even though the rule is now mandatory upon the

trial court where the exception is not applicable, violation of the rule is not per se reversible error. Even in criminal cases where an allegation of deprivation of the defendant's rights is always closely scrutinized, we have required a showing of prejudice to those rights. *Swift v. State,* 224 Md. 300, 167 A. 2d 762; *Breeding v. State,* 220 Md. 193, 151 A. 2d 743; *Bulluck v. State, supra.*

"Assuming without deciding that real estate appraisers do not come within the exception to the rule requiring sequestration of witnesses, nevertheless we are unable to find any prejudicial error in this case." *Id.* at 226.

This case is the reverse of that in *Creswell* and in the criminal cases above cited in that the complaint is as to the wrongful exclusion from the court room of the expert witness. The trial court requested a proffer of the testimony of the experts. With reference to real estate appraisers the proffer was that they were ordinary real estate appraisers who had made an investigation prior to trial upon which they would base their testimony as to the value of the property along with information testified to on the witness stand. With reference to the engineering expert the proffer was that he would testify on the basis of investigation outside of the court room and on testimony given as to the use of the property. The court asked for a further proffer as to his qualifications and his testimony after which the following colloquy took place:

"Mr. Buchanan: A registered civil engineer who will testify as to residual damages to the property not taken.

"The Court: Is that all you are proffering? His testimony is going to go to the residual damages?

"Mr. Buchanan: That's the heart of his testimony."

These experts were not testifying on the basis of the evidence presented at the hearing. The real estate expert was giving his opinion as to the value of the property based upon independent investigation. The engineering expert was proposing

to testify as to the cost of constructing a drainage system on the property as a result of the State Roads Commission acquisition. Likewise, therefore, his testimony was based upon outside investigation and not on the basis of the testimony presented in the court room. Accordingly, there was no error on the part of the trial court in excluding the witnesses.

Burton moved to strike the testimony of the State's expert where he reduced by 50% his evaluation figure for the property taken on the basis of its being zoned rural residential. The expert testified that the highest and best use of the subject property would be for commercial purposes. A strip 55 feet in depth from Annapolis Road was zoned rural residential. The remainder of the tract was zoned commercial. The appraiser placed a value on the whole tract from which he derived a square foot basis and then arbitrarily cut that square foot basis by 50% for the rural residential portion on the basis of the zoning.

Burton contends that under the authority of *Congressional School of Aeronautics, Inc. v. State Roads Comm'n,* 218 Md. 236, 146 A. 2d 558 (1958) this action was improper and the testimony should have been stricken. In that case there was a claim that an area abutting on a road had been zoned residential for a strip 100 feet wide with another strip 200 feet beyond that zoned commercial, the strip zoned as residential being "reserved for road widening". Two of the State's witnesses reduced their evaluation by 50% because of the residential zoning. We are cognizant of, and appellant has pointed out, the general proposition stated there:

> "* * * [Z]oning cannot be used as a substitute for eminent domain proceedings so as to defeat the constitutional requirement for the payment of just compensation in the case of a taking of private property for public use by depressing values and so reducing the amount of damages to be paid." *Id.* at 241.

But, we further said:

> "The Commission asks us to pass upon the validity of its policy just outlined [informing local planning or zoning bodies of contemplated highway improvements and the proposed routes thereof, in order that such

anticipated improvements could be taken into account and the cost of acquisition of land for highway use could be held down]. We are not prepared to do so on the scanty record before us. * * * We cannot say, *in vacuo,* how far it might be permissible for public authorities to proceed along such lines." *Id.* at 244-245.

The ground on which a reversal was made in that case, however, was that the State's expert was permitted to testify that he based his estimate of market value partly upon the limited time for which a prospective, willing purchaser might be able to use the property because of the prospects of its being taken for the highway widening which gave rise to the suit.

Code (1967 Repl. Vol.) Art. 33A, § 6 provides that the fair market value of property in a condemnation proceeding "* * * shall be the price as of the valuation date for the highest and best use of such property * * *." We held in *State Roads Comm'n v. Warriner,* 211 Md. 480, 128 A. 2d 248 (1957) in an opinion by then Chief Judge Brune that in determining such value, consideration might be given to future zoning reclassifications, permitting an expert to testify as to the probabilities of such reclassification.

In *Hutchison v. Baltimore Gas & Elec. Co.,* 241 Md. 329, 216 A. 2d 573 (1966) we said:

"* * * As pointed out by the appellant, it is permissible for an appraiser, when valuing property in a condemnation case, to consider the probability of a tract being rezoned to a higher or lower classification in the reasonably near future. [citing authorities] However, it is manifestly improper to allow a real estate appraiser in such a case to value property as if it were in fact already zoned to the higher classification. The reason for this was suggested in Mr. Helfrich's own testimony, *i.e.,* change in zoning is a risky and uncertain matter and a purchaser in the open market would certainly not pay the same amount for land which has the possibility of being rezoned to a higher (more valuable) classification than he would be will-

ing to pay if the change in zoning had already been accomplished. The language used in 4 Nichols, *Eminent Domain* (3d Ed.), Section 12.322 [1], at 238 and 245 is apposite here:

> " 'Where * * * there is a possibility or probability that the zoning restriction may in the near future be repealed or amended so as to permit the use in question, such likelihood may be considered if the prospect of such repeal or amendment is sufficiently likely as to have an appreciable influence upon present market value. * * *

> " *'An important caveat to remember in applying the rule is that the property must not be evaluated as though the rezoning were already an accomplished fact.* It must be evaluated under the restrictions of the existing zoning and consideration given to the impact upon market value of the likelihood of a change in zoning. * * *.' " (citing cases) (emphasis in *Hutchison*) *Id.* at 332-333.

From the aforegoing it will be seen that although the jury is permitted to consider the *reasonable probability* of a change in zoning classification *within a reasonable time* in valuing property subject to condemnation proceedings, consideration must be given to its present zoning status. Therefore, there was no error on the part of the trial court in refusing to exclude from the evidence an appraisal based upon the current status. No evidence of the probability of change was presented. *Cf. Stewart v. Mayor and City Council of Baltimore*, 250 Md. 569, 244 A. 2d 231 (1968).

Burton contends the trial court erred in not allowing his expert engineering witness to testify as to the fair and reasonable cost to enclose a drainage system on the subject property.

Code (1967 Repl. Vol.) Art. 33A, § 5 (b) provides:

> "* * * The damages to be awarded where part of a tract of land is taken shall be the fair market value (as defined in § 6) of such part taken, but not less than the actual value of the part taken plus the severance or resulting damages, if any, to the remainder of the

tract by reason of the taking and of the future use by the plaintiff of the part taken. * * *"

Burton stated in his brief:

"It is conceded in the instant case that appellants did not have development plans for the property not taken in fee, the commencement of which was probable in the reasonably near future. How the remainder of appellants' property will be developed, and when, are not settled. * * *"

This case is not like *State Roads Comm'n v. Hance,* 242 Md. 137, 218 A. 2d 33 (1966) on which Burton relied. In that case there was evidence of the condemnee's plans for future development of the property by way of construction of a driveway in the shape of a horseshoe. There was testimony that such a driveway would increase the value of the property. On the issue of the admissibility of such testimony, relying in part on *State Roads Comm'n v. Warriner, supra,* we said:

"* * * The reasoning of these cases applies to the admissibility of evidence of the most profitable use of the tract as a whole, if a part had not been taken, as an element of consequential damages." *Id.* at 140.

In *Hance* there was evidence that the construction of the proposed driveway would have increased the market value of the tract as a whole, and that the taking of part of the property made the contemplated driveway impractical, leaving the house unoriented to the remainder of the site. Prior to the taking of the parcel, the land was available for the proposed landscaping, including the driveway, as a part of the completed residence, which was the best use for the tract. Evidence of what the completed residence would have been like had not the taking occurred was therefore relevant, if the construction of the driveway as part of the residence was probable in the reasonably near future. This Court said:

"* * * There was ample evidence that the construction of the horseshoe driveway was probable within a reasonable time, had it not been for the taking. Mr.

Hance had built his house himself, and he was going to construct the driveway." *Id.* at 141.

In *Hance* the testimony as to the value of the property if there were a horseshoe shaped driveway was tied to the testimony of the land owner that he proposed construction of such horseshoe driveway. There was no testimony of a plan for development of the property in this case.

If one of the appraisers had testified that he believed the highest and best use of the property after the taking would require a drainage system not necessary before the taking, that he believed or was informed the cost thereof would be a specified amount and that he took this into account in determining the severance or resulting damages to the remainder of the tract, then corroborating testimony from the engineering expert would have been relevant as to the necessity of this system and the cost thereof. No such proffer or foundation having been laid, there was no error on the part of the trial court in excluding the testimony.

*Judgment affirmed. Appellants to pay the costs.*