SHELL OIL COMPANY *v.* SUPERVISOR OF ASSESSMENTS OF PRINCE GEORGE'S COUNTY

[No. 73, September Term, 1976.]

*Decided December 7, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Roger D. Redden,* with whom were *Francis X. Wright* and *W. Gar Richlin* on the brief, for appellant.

*Ward B. Coe, III, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We shall here reject a contention that tax assessors in assessing business property deliberately rejected its potential for service station use, thus discriminating against service station land assessed at a higher value.

This appeal was before us previously in *Shell Oil Co. v. Supervisor,* 276 Md. 36, 343 A. 2d 521 (1975). We declined to consider the merits of the appeal at that time, holding that "[s]ince the Maryland Tax Court does not exercise a judicial function, review of a Tax Court decision is an exercise of original and not appellate judicial jurisdiction. Consequently, Ch. 385 of the Acts of 1971, and Ch. 448 of the

Acts of 1975, insofar as they provide for appeals to this Court and to the Court of Special Appeals from Tax Court decisions, are unconstitutional." We directed that the case be transferred "to the Circuit Court for Prince George's County for expeditious judicial review by that court of the Tax Court's decision." Appellant, Shell Oil Company (Shell), was dissatisfied with the circuit court's decision and appealed to the Court of Special Appeals. We granted the writ of certiorari prior to consideration of the case by that court.

At issue here is the propriety of the assessment for the year 1970-71 of land owned by Shell at 2210 University Boulevard, Hyattsville, Prince George's County. It is occupied by a gasoline service station. No challenge is made to the assessment of the building there erected. The land is located in the middle of the block on the north side of University Boulevard, a divided highway, some 1400 feet east of its intersection with Riggs Road, described by Shell as a "major intersection." The assessment for the land for the year in question was at $3.00 per square foot. Shell points to certain other commercial properties in the immediate vicinity which its experts regarded as equally adaptable for service station use and which were assessed at $1.80 per square foot. It is on the basis of this difference that the challenge here is made. For ease of understanding the location of the various sites to which reference has been made, we append a copy of the plat used by Shell which the reporter is directed to reproduce.

Shell does not contend that its property is assessed at more than its full cash value. The requirement of Maryland Code (1957, 1969 Repl. Vol.) Art. 81, § 14 (b) (1) is that real property "shall be assessed at the full cash value thereof on the date of finality," a term defined as meaning "current value less an allowance for inflation, if in fact inflation exists." At the time in question the allowance for inflation was 40%, meaning that real property should be assessed at 60% of its fair market value. Shell refers to Code (1957, 1969 Repl. Vol.) Art. 81, § 229 (1) providing that on appeal from the tax court a reviewing court "shall determine the case upon the record of the Maryland Tax Court and may affirm,

reverse, remand or modify the order appealed from; provided, that, unless such order is erroneous as a matter of. law or unsupported by substantial evidence appearing in the record, it shall be affirmed," a provision now found by virtue of Ch. 338 of the Acts of 1976 (in response to our earlier decision in *Shell*) in virtually the same language in Code (1957, 1975 Repl. Vol., 1976 Cum. Supp.) Art. 81, § 229 (o). It claims the order of the Tax Court was "erroneous as a matter of law" and "unsupported by substantial evidence appearing in the record."

Shell argues:

"A fundamental principle of real property assessment and taxation in Maryland is that all property within the same classification or subclassification must be treated uniformly. This principle is clearly set forth in Article 15 of the Declaration of Rights and it requires the assessor to consider the *same* factors in assessing each piece of property within a given class or subclass. If a property has the potential to generate a certain amount of income because of its size or location, that potential must be incorporated into the assessment of that property, regardless of whether or not the owner of that property has taken full advantage of that potential. The corollary to this principle is that the assessor may not, in assessing one property, consider certain factors which give that property value and ignore those very same factors in assessing other properties. This was the clear holding of this Court in *Weil v. Supervisor of Assessments of Washington County*, 266 Md. 238 (1972)." (Emphasis by Shell.)

Maryland Declaration of Rights Art. 15 provides in pertinent part:

"[T]he General Assembly shall, by uniform rules, provide for the separate assessment, classification and sub-classification of land, improvements on land and personal property, as it may deem proper;

and all taxes thereafter provided to be levied by the State for the support of the general State Government, and by the Counties and by the City of Baltimore for their respective purposes, shall be uniform within each class or sub-class of land, improvements on land and personal property which the respective taxing powers may have directed to be subjected to the tax levy . . . ."

Shell cites *Weil v. Supervisor of Assess.*, 266 Md. 238, 292 A. 2d 68 (1972). That, too, was a gasoline service station case. It was argued that an assessment schedule which imposed a higher valuation per square foot on prime land actually devoted to service station use than on commercial land not so devoted established an illegally disproportionate, non-uniform, discriminatory assessment and was an illegal administrative subclassification of land. It was there contended "that the assessment of all parcels of land located along a given highway and similarly available for highway commercial uses in the same immediate neighborhood must begin with the same method of valuation, which means the same unit values where the unit value method is applied." It was argued that "if one piece of commercial land is to be assessed at $2.00 a square foot because it has something called a 'full service' service station on it, or at $1.50 if it has less than 'full service' service station on it, and another piece of commercial land in the same business area is to be assessed at $.60 a square foot because it is used as a new car sales outlet, then *only the service station land* is being assessed at its highest and best use and the car sales land is being assessed at its lower actual use." (Emphasis in appellant's brief in *Weil*.) We observed there:

"It is apparent that the appellants are under the impression that all land in a given area will carry the same assessment per square foot. We do not understand a subclassification as being created when the highest and best use of a property is taken into consideration in determining its present cash value. Physical characteristics of land will

vary from lot to lot. The very size of a lot might well militate against its being used for certain purposes and suggest its use for other purposes. Good economics and good planning would dictate that there be some variation of use from lot to lot in a given area." *Id.* at 254.

We further said:

"The fact that one lot was assessed at one figure per square foot and another lot at a different figure per square foot would not show discrimination in the absence of a showing that the two lots were in fact so similar in all respects as to be identical in value. For us to reverse on the ground of discrimination, it would be essential that there be some positive showing of discrimination as, for instance, the fact that other commercial property assessed at a lower figure per square foot in fact had a potential for service station use which had been ignored by the assessors. Such a showing might then be evidence of mistake, arbitrariness, or fraud, to use the language of *Rogan*. There has not been even the slightest intimation of lack of good faith upon the part of the taxing authorities here. Therefore, it can not be said that there has been conscious, arbitrary discrimination against the appellant." *Id.* at 255.

The second sentence of the latter quotation presents the basis for Shell's contention here. It claims that its comparables had a potential for service station use which was ignored by the assessors. In *Weil* we did not state or suggest that such a showing would in and of itself be sufficient to establish discrimination or nonuniformity so as to entitle the taxpayer to reversal of the assessment as a matter of law. Such a showing would require us then to examine all relevant facts to determine whether there was in fact "mistake, arbitrariness, or fraud," to use the language of *Rogan v. Commrs. of Calvert County*, 194 Md. 299, 71 A. 2d 47 (1950).

The deputy supervisor in charge of the appraisal division

in the office of the Supervisor of Assessments for Prince George's County testified with reference to the potential for service station use of Shell's three comparables. He said that in each instance "the current use and the current zoning was its highest and best use; that any other use would be a highly speculative use, it would not be probable and [the assessing authorities] did not feel [they] could base assessments on a speculative use for something which could only happen possibly sometime in the future." He noted that the area was saturated with service stations. When asked whether he considered the potential use for service station purposes of the three comparables here cited by Shell, the Gallery, Gino's, and Kinney's, he said:

> "Yes, we did. We considered the potential of its highest and best use, of its use as a service station site. All of these stations were actually improved. There was no zoning which would allow a gas station to be built on these sites. One of the requirements for a special exception for a service station in Prince George's County is the necessity to prove that a gas station is needed in the area. Also one of the requirements is to prove that it would not upset the balance of land usage in the area for other trades and commercial uses. Actually, there happens to be eleven service station sites right in this general area. There are also four other stations at the corner of Riggs Road and East-West Highway which is just a short distance from these. In considering their usage, we felt that it would not be economically feasible to have other sites valued as a service station site."

Current zoning was an entirely proper factor for the assessor to consider in reaching his determination as to fair market value just as this is a proper factor to be considered in an eminent domain proceeding. In a condemnation case a valuation based upon a zoning classification other than that currently existing must be accompanied by evidence of a probability of rezoning to that classification within a reasonable time. *See State Roads Comm'n v. Parker*, 275 Md.

651, 661, 344 A. 2d 109 (1975); *Carl M. Freeman, Inc. v. St. Rds. Comm'n,* 252 Md. 319, 329, 250 A. 2d 250 (1969); *Burton v. State Roads Comm'n,* 251 Md. 403, 407, 247 A. 2d 718 (1968); *Hutchison v. Balto. Gas & Elec.,* 241 Md. 329, 332-33, 216 A. 2d 573 (1966); and *State Roads Comm. v. Warriner,* 211 Md. 480, 128 A. 2d 248 (1957). The zoning on the other properties did not permit service station use. Before such use could be made of the land in question, it would be necessary to obtain a special exception, as stated by the assessor. Although there is an implication by Shell that such special exceptions are routinely or perfunctorily granted, our cases indicate to the contrary. *See, e.g., Prince George's Co. v. Meininger,* 264 Md. 148, 285 A. 2d 649 (1972), and *Bd. of Co. Comm'rs v. Ziegler,* 244 Md. 224, 223 A. 2d 255 (1966), both of which involved special exceptions for gasoline service stations in Prince George's County.

The tax assessor mentioned the fact that Shell's comparables had improvements on them which were not suitable for service station use. Shell makes the point that "the fact that a property contains improvements which are not suitable for service station use does not diminish the potential of that *land* for service station use." (Emphasis Shell's.) This is true, but the presence of improvements on the land not suitable for service station use would be a factor to be considered in determining the value of the raw land. We pointed out in *Board of Education v. Hughes,* 271 Md. 335, 317 A. 2d 485 (1974), a condemnation case, that in order to form an opinion as to the fair market value of a tract of land an expert must place himself in the position of "a seller, willing but not obligated to sell," and "a buyer, willing but not obliged to buy . . . ." We said relative to the process of determining fair market value:

> "No one parcel of land is exactly the same as another. Each parcel is unique. Nevertheless, a potential developer of a tract such as this, in order to determine its fair market value, would first work out what he conceived to be the value per acre of an ideal piece of clear land. Then, inevitably, he would make a number of additions to and subtractions

from that ideal price in his effort to ascertain the fair market value of any given tract. If there were buildings on the land of no possible use to him in his development, he certainly would subtract from his ideal value the cost of demolition of those buildings and the cost of clearing the site. If substantial grading of a site were necessary, then obviously this potential developer would take that cost into consideration in his determination of value. He would look more favorably upon soils known by him to be capable of bearing the weight of the buildings he contemplated erecting than soils known by him to require pilings for foundation purposes. If the tract were covered with timber, he would deduct from his ideal price per acre the cost of clearing the land in order to render the site ready for building. He undoubtedly would take into consideration the sum or sums he might expect to derive from the sale of that timber, dependent upon whether it had a value merely for pulpwood, whether it had a value for piling, whether it had a value for sawtimber, or whether the potential was for a combination of the three. He conceivably would be prepared to pay more for a tract covered with large, old growth timber, simply because of the revenue he might reasonably expect to derive from it. Likewise, an owner, in setting his sale price, would take into consideration the amount which he thought he might obtain from the sale of timber. If he owned two parcels of land of equal size, equally good location and equally favorable terrain, one of which was covered with scrub pine and the other with good timber for piling, he would expect to sell at a higher price the tract with the potential piling." *Id.* at 345-46.

Certainly the tax assessor did not err when he took into consideration the type of buildings on these three comparables in making his evaluation of the land. Whether it be for assessment purposes or for eminent domain, the

quest is to determine fair market value. The statement by Judge Henderson for the Court in *Bornstein v. State Tax Comm.*, 227 Md. 331, 337, 176 A. 2d 859 (1962), that "[o]rdinarily the cash value [for assessment purposes] would be the current market value, or what a willing purchaser would pay to a willing seller in the open market," is virtually the same as that set forth in Code (1974) § 12-105 (b) Real Property Article relative to fair market value in a condemnation proceeding.

In *Rogan v. Commrs. of Calvert County, supra,* our predecessors said:

> "The purpose of the equal protection clause of the Fourteenth Amendment of the Constitution of the United States is to protect every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by the provisions of a statute or by improper enforcement of a statute. Intentional and systematic undervaluation by assessors of other taxable property in the same class violates the constitutional right of a person taxed upon the full value of his property. However, mere errors of judgment on the part of State or County officials in making assessments will not support a claim of such discrimination. There must be something which in effect amounts to an intentional violation of the essential principle of practical uniformity. The good faith of such officials and the validity of their actions will be presumed. When their actions are assailed, the burden of proof is upon the complaining party. *Sunday Lake Iron Co. v. Township of Wakefield,* 247 U. S. 350, 38 S. Ct. 495, 62 L. Ed. 1154 [(1918)]; *Sioux City Bridge Co. v. Dakota County, Nebraska,* 260 U. S. 441, 43 S. Ct. 190, 67 L. E. 340, 28 A. L. R. 979 [(1923)]." *Id.* 194 Md. at 309-10.

To like effect *see Charleston Assn. v. Alderson,* 324 U. S. 182, 190-91, 65 S. Ct. 624, 89 L. Ed. 857 (1945), and the

numerous cases there cited by Mr. Chief Justice Stone for the Court. The Court also stated in *Rogan:*

> "We accept the rule, as adopted in other States, that the assessment of the property of others at a lower proportion of its value than that of a complaining taxpayer, which is not assessed at more than its fair cash value, does not make the tax on the latter invalid, unless the assessment was fraudulently made." *Id.* 194 Md. at 313.

At oral argument it was suggested that perhaps the statement we have quoted from *Rogan* had been eroded by *Sears, Roebuck v. State Tax Comm.*, 214 Md. 550, 136 A. 2d 567 (1957). We do not see it that way. In *Sears* the statute then in effect, Code (1951) Art. 81, § 13 (a) required all property to be assessed at its full cash value. No reference was made to inflation. As Judge Collins in the opinion there quoted from the agreed statement of facts filed by the parties pursuant to Maryland Rule 828 g, "[W]ith respect to real estate, the [State Tax] Commission ha[d] directed its assessors to deduct amounts resulting from inflationary influences from the value of the properties to be assessed [, which] deduction reduce[d] the value of real estate for tax purposes below its current value. No similar deduction [was] made in the case of assessment of stock in trade." Inflationary influences were in no way considered in assessing inventories. The Court said that "[t]he discrimination [t]here ha[d] been intentional and arbitrary."

We observed in *Weil:*

> "Valuation of land is not an exact science. Experts nearly always differ as to their opinion of fair market value. So long as the end result of the assessment process is conscientiously, fairly and honestly to bring the assessment of all land to the same percentage of fair market value, a taxpayer is hardly in a position to contend that there is discrimination. This gives reason to the rule enunciated in *Rogan* that the fact an adjoining property owner might be assessed at a lower

proportion of its value would not make the assessment invalid unless it was improperly made. Such a situation would contrast with that in *Sears* . . . ." *Id.* at 254-55.

In *Supervisor of Assess. v. Banks,* 252 Md. 600, 609-10, 250 A. 2d 860 (1969), yet another tax assessment case, we quoted the standard for judicial review of facts set forth in *Insurance Comm'r v. Nat'l Bureau,* 248 Md. 292, 309-10, 236 A. 2d 282 (1967), namely that it "should be limited to whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." There is substantial evidence appearing in the record here to sustain the determination of the tax court. Thus, a reasoning mind could have reached the factual conclusion the agency reached. When the record is carefully examined it is seen that the tax assessors have not considered certain factors which give Shell's property value and then ignored those very same factors in assessing other properties. No lack of good faith on their part has been shown. No such discrimination as in *Sears* was shown here. No intentional violation of the essential principle of practical uniformity has been shown. Accordingly, we do not find the determination of the tax court erroneous as a matter of law.

*Judgment affirmed; appellant to pay the costs.*

DOCKET Nº 130

DOLLAR AMOUNT REPRESENTS
ASSESSMENT PER SQUARE FOOT

2210 University Blvd.
Hyattsville, Md.