0.040 ACRES OF LAND, more or less, in the City of New Castle, New Castle Hundred, New Castle County and State of Delaware; FRANK L. HEWLETT, SR., Widower; and other UNKNOWN OWNERS, Defendants Below, Appellants, v. THE STATE OF DELAWARE Ex. Rel. The State Highway Department Plaintiff Below, Appellee.

(*February* 11, 1964.)

TERRY, Chief Justice, CAREY, Justice, and STIFTEL, Judge, sitting.

*Edward W. Cooch, Jr.* (of Cooch and Taylor) for Defendants Below Appellants.

*Richard J. Baker* for Plaintiff Below Appellee.

Supreme Court of the State of Delaware, No. 77, 1962.

STIFTEL, Judge.

Frank L. Hewlett, Sr. and other unknown owners appeal an award of a condemnation commission. The award was based on a partia' taking of a portion of defendants'[1] residentially zoned property by the State Highway Department in order to widen a road. Defendant claims that the trial judge erred when he struck from the evidence testimony of two of his appraisers and exhibits of changes in the zoning ordinance produced by the City Clerk of the City of New Castle which tended to show that this residential property could reasonably be expected to be re-

---

[1]Hereafter, we shall refer to defendants as "defendant" owner or "Hewlett" as a matter of convenience.

zoned from a residential to a commercial[1a] (business) classification. The trial judge ruled this testimony inadmissible because, in his opinion, the appraisers had not shown that they were specially qualified to predict the action of the zoning body (City Council) and on the ground that all the evidence of reasonable probability of change was too remote and speculative to be submitted to the commission. The only question for this court to decide is whether the trial julge erred in striking this evidence and in refusing to charge the commission in accordance with defendant's prayers.

In a condemnation proceeding, the value of the property must ordinarily be determined by a consideration of the uses for which it is available. *Board of Education of Claymont Special School District v. 13 Acres of Land, etc.,* 11 Terry 387, 50 Del. 387, 131 A.2d 180, 183; *Wilmington Housing Authority v. Harris,* 8 Terry 469, 47 Del. 469, 93 A.2d 518. 521. Norma'ly, evidence of increased valuation of land is inadmissible where the availability of a use is prohibited by zoning regulations. 4 Nichols, Eminent Domain, Sec. 12.322 (Rev. ed. 1962).

There is, however, an exception to this rule. Thus, where land is not available for a particular use because of a zoning ordinance but there is a reasonable probability that the prohibition or restriction will be modified or removed in the near future, then the effect of such probability upon the value of the property may be taken into consideration in arriving at market va'ue. *Board of Education of Claymont Special School District v. 13 Acres of Land, etc.,* supra; see, Anno: 173 A.L.R. 265, "Zoning or

---

[1a]The term "commercial" will be used rather than "business", which is the classification set forth in the zoning ordinance, because all papers and testimony refer to the classification as "commercial". Parties agree the words are synonymous.

other governmental regulations as to use of property as a factor in determination of damages in eminent domain"; see, also, 4 Nichols, Eminent Domain, Sec. 12.322 (Rev. ed. 1962), and Orgel on Valuation, "Eminent Domain", 2d ed., § 34. Both parties agree that this is the law and both parties agree that the most favorable use for this land would be commercial. However, the parties differ on the application of this law to the facts of this case.

Wilmington Road is a State highway which runs from south Wilmington to and through a portion of the City of New Castle. Near the southern terminus of Wilmington Road (sometimes known as "New Castle Avenue"), there is a development in the northern end of the City of New Castle known as Baldton. On February 2, 1962, the date of taking, Frank L. Hewlett, Sr. was the owner of approximately one-half acre of land located on a corner formed by the intersection of the westerly side of Wilmington Road and the northerly side of Moore's Avenue. This property fronted for about 141 feet on Moore's Avenue and then for about 97 feet on Wilmington Road. The State Highway Department required some of defendant's property in order to widen a portion of Moore's Avenue and Wilmington Road where they intersected. The total amount of land taken amounts to approximately four-tenths of one acre, the major portion of which was an almost equilateral triangular piece of land about fifty feet on each side of the triangle removed from the corner of defendant's property formed by the intersection of Moore's Avenue and Wilmington Road.

Defendant's property was zoned by the City of New Castle as RS Residential when the Zoning Code was adopted by the City in 1951 and was unchanged on the date of

taking.[2]

At the trial, the owner contended that, although commercial usage was not permitted at the date of the taking under existing zoning regulations, nevertheless, there was a reasonable probability of a rezoning in the near future so as to permit commercial use. It was contended by the owner that, for this reason, the market value of the property was enhanced and that the commission should be given the opportunity to consider such enhanced value in measuring the just compensation to which the owner was entitled. The State Highway Department, on the other hand, contended that there was not a reasonable probability of a rezoning in the near future which would permit a commercial use of this property. It contended, therefore, that the market value of the property was not enhanced by such a probability, and that, therefore, the commision should not be given the opportunity to speculate in that direction.

The evidence tended to give the following picture of defendant's neighborhood: A single track railroad crosses Wilmington Road approximately four or five hundred feet south of the Hewlett property. Immediately south of the railroad, on the west side of Wilmington Road, going toward the City of New Castle, there is an industrial plant known as either the Isocyanate or Gates Engineering Plant. Almost next door to Isocyanate is the City water works, and past it, on the west side, is the Quillen

---

[2]Section 300 of the Zoning Ordinance of the City of New Castle divides New Castle into six classes of districts, as follows:

Historical Area "A"

Residential "RS" Districts

Residential "RD" Districts

Residential "RM" Districts

Business Districts

Industrial Districts

Brothers Auto Sales, which consists of a showroom, a garage and a used car lot. South of Quillen are the B. J. Hoy (a local variety store chain) offices and warehouse. The Hoy warehouse is approximately two blocks south of the railroad, less than four blocks south of the Hewlett property. Returning toward the subject property, on the east side of Wilmington Road is a vacant field referred to as the Immanuel Church property (formerly part of the Glebe farm), without any improvements thereon up to the railroad. North of the railroad, on the east side, across the street from subject property, there is a housing development of relatively recent vintage known as New Castle Manor. There are about six homes fronting on Wilmington Road on the east side and some fifty homes in the entire development as it runs east of Wilmington Road toward the Delaware River. Megginsons' house is a part of New Castle Manor and is across the street from the Hewlett property. Continuing on the east side of Wilmington Road, immediately north of New Castle Manor, is a transformer station of the Delaware Power & Light Company. This station was erected in 1937, and it is approximately one and one-half blocks to the north of the Hewlett property on the opposite side of Wilmington Road. North of this station, there are eleven acres of open land owned by the Chicago Bridge and Iron Company which are zoned residential. North of this land is the Duling property. Duling is a plumber by trade and has a plumbing shed on his property to the rear of his house. This property is approximately three blocks north of the Hewlett property on the opposite side of Wilmington Road. Again going north, there is a residential development known as Buttonwood in the City of New Castle. North after Buttonwood is the Pennington property, on which are located a grocery store, a gas station and the Trojan Diner, facing Wilmington Road. The diner adjoins the

boundary line of a development known as Collins Park, which is the northern boundary line of the City of New Castle. The Pennington property is one-half to three-quarters of a mile from the Hewlett property. Returning south toward the Hewlett property, the City line travels down the center line of Wilmington Road past the county development of Rogers Manor and then veers back to the west at Baldton. On the west side of Wilmington Road, at Baldton, immediately north and in the same block as the Hewlett property, there are four houses and a delicatessen at the corner of Wilmington Road and Byrglon Avenue. Across the street from the Hewlett property, at the corner of Moore's Avenue and Wilmington Road, going south toward the railroad, there is a small grocery store, and almost next door to it is a sandwich shop. These three businesses pre-existed the enactment of the Zoning Ordinance and are considered nonconforming uses.

Defendant produced three witnesses besides himself for the purpose of establishing an issue of fact for the commission on the question of the reasonable probability of rezoning. The first witness was the City Clerk of the City of New Castle, Miss Ann R. Hushebeck. An evaluation of her testimony and the documents she produced discloses the following history of changes in the Zoning Ordinance:

There were eight applications showing requests for rezoning of the properties along Wilmington Road, both north and south of the Hewlett property, since 1955—six south of the Hewlett property and the railroad and two north. One was denied; and five were granted, unopposed; two were withdrawn by the applicants after opposition developed. The first application was made by Gordy and Son Co., Inc., in March of 1955, and concerned a tract south of the railroad on the west side of Wilmington Road,

which Gordy wanted rezoned from RS to a lower residential classification (RM) so that he could construct inexpensive homes. This request was denied, but in later years a major portion of the same land on the west side of Wilmington Road was rezoned to either industrial or commercial. Two applications by Quillen Brothers, one in 1955 from residential to commercial, and the other in 1958 from residential to industrial, were approved without opposition. Almost next door to Quillen, the Coccia Brothers were successful in having a large tract of land rezoned to commercial for the purpose of permitting B. J. Hoy, Inc., to construct offices and a warehouse. In fact, nearly all the land south of the railroad on the west side of Wilmington Road, extending for several hundred yards, became largely commercial or industrial after the zoning requests had been approved. Across the street, south of the railroad on the east side of Wilmington Road, set back from the road several hundred feet, is a large industrial plant readily visible. In front of the northern end of this plant, land owned by Immanuel Church, classed as residential, was coveted by the Isocyanate Company, manufacturers of a synthetic type of rubber, for a new plant . An application by Immanuel for a zoning change was opposed by the citizens of Baldton and was withdrawn.

Only two applications were made to rezone any land north of the railroad in Baldton. In 1957, the City Council allowed commercial use for Mr. Pennington, who built the Trojan Diner at the edge of the City, and changed his small gas station and neighborhood grocery store into conforming uses  The 1962 application of Councilman J. Ralph Duling for a change in zoning to commercial of a property south of the Pennington property was withdrawn.

Defendant produced two appraisers. namely, Harry B. Tingle and Paul S. Wiley. Both concluded that the best

use of the Hewlett land is commercial and that there was a reasonable probability that the land would be rezoned. They based their opinion on the following facts: That the property was on a busy street, where approximately 8,500 to 9,000 cars passed daily, where noise and activity made a new residence undesirable; that the neighborhood had undergone substantial changes since 1951 and it was now essentially a mixed neighborhood, namely, residential, commercial and industrial; that within several hundred feet of the site there were several commercial establishments; and that basically there was only one logical use for this corner property—commercial. Both refused to consider the railroad track as any natural line of demarcation, such as commercial to the south and residential to the north.

The State produced one appraiser, Samuel C. Hanby, who believed it improbable that a rezoning effort would be successful and thought the Hewlett property, which was immediately surrounded by residences, was properly zoned.

The trial judge rejected *in toto* the testimony of defendant's appraisers on the basis that they were not endowed with the special qualifications which enabled them to render an opinion on the reasonable probability of a change in a zoning ordinance. Consequently, the trial judge was of the opinion that a member of a zoning body was essential or at least a letter from the zoning body indicating the likelihood of a change in zoning ordinance in this area was required before any instruction to the commission would be justified.

■■ The mere fact that neither appraiser ever sat on a zoning board did not tend to disqualify either of them to testify as to the trends in the area, the best use of the land, and the bases on which each arrived at a de-

cision on valuation. See, *Snyder v. Commonwealth,* 412 Pa. 15, 192 A.2d 650, 652. They were both admittedly experts on real estate valuation, and it would reasonably be expected that they would possess the special knowledge of the many factors which would enable them to form an intelligent and fairly accurate estimate of the market value of the land. One such factor is a study of the reasonable probability of a change in a zoning restriction due to trends of which they are cognizant. We are of the opinion that the trial judge erred in striking their testimony from the record.

Our determination that the expert testimony should be permitted would obviously permit the consideration by the commission of the action of the City Council with reference to past applications. We are of the opinion that the expert testimony, considered in conjunction with the zoning applications and other evidence as above indicated, created an issue of fact for the commission under the facts and circumstances of this case.

Reversed and remanded.