## LARRY'S ENTERPRISES, LTD. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 1059, September Term, 1982.]

*Decided April 13, 1983.*

The cause was argued before LOWE, LISS and GARRITY, JJ.

*Gary I. Strausberg,* with whom were *Melnicove, Kaufman, Weiner & Smouse, P.A.* on the brief, for appellant.

*Michael J. Doxzen, Assistant Solicitor of Baltimore City,* with whom were *Benjamin L. Brown, City Solicitor of Baltimore City,* and *Ambrose T. Hartman, Deputy City Solicitor of Baltimore City,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

In April of 1976, appellee, Mayor and City Council of Baltimore, condemned approximately one acre of land in the Park Heights Urban Renewal Area for use as a public park with benches and playground equipment. Appellant, Larry's Enterprises, Ltd. had purchased this then commercially zoned property on "automotive row" in 1967 for $61,500 for use in his automotive retail business. He expended thereafter some $25,000 to improve it for such purpose; however, in 1971 pursuant to a "comprehensive" rezoning, the City down-zoned this piece to a residential use. Located on Reisterstown Road, the property is surrounded by commercial properties appearing as an artificially created residential oasis in a desert of commercial property on the street. Indeed, according to expert testimony proffered at the trial, the property was "spot" rezoned "coincidentally" in close proximity to the time the city was preparing to condemn the property. According to the proffered evidence, the property was practically valueless for residential development because of its isolation by surrounding commercial properties, but was quite valuable for its potential as commercial property and that there was a reasonable probability that it could be rezoned commercially.

The trial judge denied appellant the right to offer expert testimony to the jury that there was a reasonable probability that the property could be rezoned. Despite the expert's opinion that there had been a mistake in having spot-down-rezoned the property from which he had concluded the likelihood of the rezoning to commercial, the judge held, as a matter of law, that there was no reasonable probability that the property could be so rezoned. The case was, therefore, submitted to the jury with only the City's expert's opinion that this residential property in the heart of a commercial neighborhood was worth only $18,000. Dutifully, the jury awarded the only figure before them for consideration.

The trial judge apparently recognized that "evidence of a reasonable probability of a change in zoning classification

within a reasonable time [1] may properly be admitted and its influence upon market value at the time of the taking may be taken into account." *State Roads Comm. v. Warriner,* 211 Md. 480, 484 (1957). We think he erred, however, in usurping the jury's function in light of the proffer, by deciding whether there was or was not "a substantial possibility or probability of a reclassification". *Id.* at 486.

The evidence proffered here, and elicited from the expert by the judge out of the presence of the jury, was equal to, or more substantial than, that admitted in *Warriner.* In that case the Court of Appeals stated that:

> "Without reviewing the testimony in detail, we think that the showing as to the growth in population of the Towson area, the marked expansion of its commercial area outwards along the York Road towards the Wolsh tract and the demand for property for industrial use in the Towson area, the proximity of a tract already zoned as light industrial, the adaptability of the tract to such use, two widenings of the York Road and the opening of a part of the Baltimore-Harrisburg Expressway in the vicinity, and the opinions of expert witnesses that the highest and best use of the Wolsh tract was for light industrial use, were sufficient to meet the test of at least a reasonable probability of reclassification within a reasonable time." *Id.* at 486-487.

The testimony proffered in this case was as follows:

*"EXAMINATION BY THE COURT:*

Q   Sir, with respect to the subject property, in your opinion in 1976 at the time that this property

---

1. His remarks, however, indicate that the likelihood should be an imminent one. We assume his use of that term (spelled by the reporter as "eminent") was intended to comprehend a reasonable time pursuant to the rule rather than "about to occur", which is the dictionary definition of imminent. See *The American Heritage Dictionary of the English Language.*

was taken, was there in your opinion a reasonable probability that it would be commercially rezoned eminently?

A Yes, sir. I feel that it wouldn't be economically feasible to develop it residential. It's surrounded by commercial — if you look at the map, prior to the change, we will see that it's almost a spot zoning, that there still remains just this one little area that was rezoned residential. All the rest of the street remained commercial, and because of the type and the variety of commercial there, I don't feel there was any chance of developing residential, and it would be rezoned for commercial. It's a logical step.

Q Well, now, did not the zoning authorities understand the very things you're talking about and yet nevertheless down zoned it to residential?

A Coincidentally a close proximity at the time the City was going to acquire the property, No. 1; and, No. 2, they have been known to make mistakes before. I mean, this is definitely a spot, and if we look at the zoning map which is attached to the appraisal report, it's a spot rezoning to downshift it to residential, one little area right between two commercial strips.

Q Well, now, you mention the mistake. Do you contend that a mistake was made?

A I contend, yes, sir, that there is an error; and, therefore, under the law it's a reasonable probability for rezoning. Under the highest and best use, certainly the only proper way would be for commercial.

Q Now, when you say an error was made, was that an error made by people who may be human beings and who make mistakes, an error of judgment, that they didn't give sufficient emphasis to a particular fact that in your view they should have given an emphasis to, or was it a mistake in the

submission of data to the zoning authorities, so that when they came to a conclusion, they came to a conclusion based on faulty data? Which kind of mistake was it?

A I'm not sure. I didn't see the data that was submitted to the zoning authorities that they made their decision on to downshift.

Q Is it fair to say that when you say mistake or error that what you mean is that they happen to be wrong, that they shouldn't have spot zoned to residential a certain area where all the rest of it was commercial, and it is more reasonable to leave it commercial?

A That is correct, and I've testified in many zoning cases in many jurisdictions.

Q Now, if there is or was a reasonable probability that it would be rezoned commercial, I ask you, would it be done [im]minently, and your answer is what, sir?

A Yes.

Q And upon what do you base that conclusion?

A Those other cases that I have testified in in various jurisdictions where when it's pointed out what is there, the property has been rezoned.

Q Well, now, with regard to other properties being rezoned, that would be persuasive, of course, depending upon whether such situations were comparable or not to this situation; but would you not agree that the most persuasive property would be the subject property, and if indeed that's so, aside from the fact that I'm not talking hindsight now, because in fact it never was commercially rezoned, but looking at it forward from 1976, would you feel that it was important that there was no evidence to have it rezoned commercial if indeed it was so logical? Would you feel that the fact —

A Why the owners did not apply for it, sir, I did not know, but I feel on the market that any property owner would apply for the rezoning and could get it because of its peculiar location.

Q Well, would it take an ordinance to do that?

A Yes, sir.

Q So correct me if I'm wrong, that any time someone attempted to get it commercially rezoned, it would have been done?

A I think so, yes."

This testimony was clearly sufficient to have permitted a question of fact for the jury whether there was a reasonable probability of the reclassification.

The judge obviously considered the City's argument that recently denied applications for commercial rezoning in the area were indicative of the improbability of "imminent" rezoning, since he accepted and marked as *court* exhibits for his perusal alone, letters so indicating. But as *Warriner* points out in similar context, such evidence is merely to be put in balance by the factfinder, not by the court in determining admissibility before the factfinder.

"The appellant seeks to discredit all such testimony by insisting upon the improbability of rezoning. This asserted improbability is rested primarily upon the fact that [the area] was still zoned as residential ... that application made [twice] for reclassification of the [condemned land] as commercial had been denied .... There is a good deal of force to the [appellant's] objections, but we do not think that the evidence as to the possible rezoning was so insubstantial as to require the trial court to instruct the jury to disregard it. Its weight was for the jury." *Id.* at 487.

Finally, although there is nothing in the extract to indicate why the judge decided not to permit the testimony,

we conclude from what is there that he did not rule that the expert was not qualified, but rather that the law placed so rigid a burden in proving "mistake" for purposes of permitting rezoning that the appellant was required to *win* that case before him as a prerequisite to reaching the jury with the lesser burden of showing a "substantial probability or possibility". Seemingly, he treated the "mistake" hurdle as a legal impediment, with only the discretionary likelihood of rezoning a jury question.

But the rigidity of the law, including the legal impediments, were matters that could have been the subject of instructions to the jury in its determination of probability to be weighed along with appellee's evidence of improbability. In fact, *Warriner* makes it clear that the sufficiency or insufficiency of the evidence of enhanced damages for purposes of admissibility, should not be decided by the court but should be left with the jury subject to proper instructions.

> "If the evidence offered proved to be insufficient to establish a reasonable probability of rezoning within a reasonable time after the date of taking, it would, we think, have been entirely in order for the trial court to have instructed the jury as to the insufficiency of such evidence and to have stated that no element or enhancement of market value could be based upon the mere possibility that at some time in the future a reclassification might occur." *Id.* at 486.

The error was instituted by holding an *in camera* suppression hearing to determine the weight of the evidence. The error was consummated by suppressing it. The testimony should have been admitted and appropriate instructions should have been considered by the court. Our holding is tempered by having to assume that the witness expressing the opinion of probability was considered by the court as

qualified in a field of expertise relevant to the inquiry. Nothing in this record, however, indicates that the witness was unqualified or was so considered by the court. The testimony we have quoted indicates quite the contrary.

*Judgment reversed.*
*Case remanded for retrial.*
*Costs to be paid by appellee.*