572 A.2d 1132

STATE ROADS COMMISSION OF THE STATE
HIGHWAY ADMINISTRATION

v.

Jeffrey H. KAMINS, et al.

No. 1182, Sept. Term, 1989.

Court of Special Appeals of Maryland.

May 3, 1990.

554

Henry F. Leonnig, Asst. Atty. Gen., Upper Marlboro, and Douglas N. Silber, Asst. Atty. Gen., (J. Joseph Curran, Jr., Atty. Gen. and Edward S. Harris, Asst. Atty. Gen., on the brief), Baltimore, for appellant.

Stephen P. Elmendorf (Joseph P. Blocher, Elizabeth M. Hosford and Linowes and Blocher, on the brief), Silver Spring, for appellees.

Argued before ROSALYN B. BELL, KARWACKI and WENNER, JJ.

ROSALYN B. BELL, Judge.

This is an appeal from a decision of the Circuit Court for Prince George's County. On January 28, 1986, the State Roads Commission of the State Highway Administration (the State) filed a Petition for Condemnation against Jeffrey H. and Marlene A. Kamins (appellees), among others,[1] to acquire their property which was needed for the State's I-68 Highway Improvement Project in Prince George's County. The case was tried before a jury on June 29, 1989 which returned an inquisition setting the damages at $500,-000. The State timely appealed, contending:

—the trial court erred by ruling that appellees met their burden of showing probability of rezoning; and

---

1. We note that this Court received a Line of Dismissal of David Gwynn and Robert Y. Clagett on September 1, 1989. The docket sheet also shows that this Court granted a Line of Dismissal on behalf of appellee Prince George's County on September 14, 1989 and on behalf of Washington Suburban Sanitary Commission on November 28, 1989. Joel Fernebok and Joseph P. Melrod are also appellees. They have an ownership interest in the property and were named in the Inquisition. The extent of their ownership is unclear, but is not material to these issues.

—the trial court committed reversible error when it failed to give requested instructions which correctly stated the law and were supported by the evidence.

We disagree with the State and affirm the judgment.

## FACTS

Appellees own 6.539 [2] acres of land located in the northeast quadrant created by the intersection of U.S. Route 50, which runs east-west, and Maryland Route 3, which runs north-south in Prince George's County. They purchased the property zoned Rural–Agricultural (R–A) [3] in March of 1983. Appellees' parcel was completely surrounded to the north, northeast and east by a 466–acre parcel of land used by the University of Maryland Science and Technology Center (Tech Center), a public and private technology office park, zoned Employment and Institutional Use Area (EIA). The Tech Center parcel also borders on both Route 50 and Route 3, but is separated from the intersection by appellees' parcel.

In addition to Routes 50 and 3, there are other roads and ramps, existing and proposed, relevant for access to both the Tech Center and appellees' parcels. Roughly one-half mile north of the Route 50/Route 3 interchange is Belair Drive, running east and west of Route 3. Between Route 50 and Belair Drive there is an access road running east and west into the old Melford Farm known as the Melford Entrance.

---

**2.** Hereinafter, the actual acreage of 6.539 shall be referred to as 6.5 acres.

**3.** Rural–Agricultural zoning allows a single family development on two-acre lots. We are certain that a structure did, at one time, exist on this tract. There is a letter from one of the State's agents to appellees dated November 12, 1985 which indicates that their home at 4811 Crain Highway is located on property "within the proposed project alignment and will have to be acquired." In addition, the record also contains a copy of the Purchase Agreement between appellees and their predecessors in interest which clearly corroborates the existence of a house as of November of 1982. We do not know whether the house still stands today.

The State sought to acquire appellees' parcel for the construction of the I–68 Highway Improvements Project. The I–68 Project at this particular intersection includes several ramps and a cloverleaf interchange which necessitates the taking of the entire 6.5–acre parcel. The ramps, referred to as the "intervening ramps," will run along the northeastern border of appellees' parcel. The cloverleaf interchange is slated for construction through the heart of appellees' parcel.

In 1981, the developer of the Tech Center applied for a rezoning of its parcel from the R–A classification to an EIA zoning in order to develop a 7.7–million–square–foot commercial and research facility. An EIA zone is a floating zone,[4] not a Euclidean zone, which has three stages of approval. In the first phase, the Prince George's County Council, sitting as District Council, must approve a Basic Plan, which is a rough outline for the proposed development. The second phase requires District Council approval of a Comprehensive Design Plan which shows the general amounts and locations of the proposed land uses and traffic circulation systems, addresses environmental matters and sets out a general schedule of development. The third phase consists of the District Council ratification of specific design plans which show specific building locations, land-

---

**4.** A floating zone has been described by the Court of Appeals as: "[A] special detailed use district of undetermined location ... in which the proposed kind, location, size and form of structures must be pre-approved, and which, like a special exception use, is legislatively pre-deemed compatible with the areas in which it may thereafter be located on a particular application, provided specified standards are gratified and actual incompatibility is not revealed." *Chatham Corp. v. Beltram,* 243 Md. 138, 149–50, 220 A.2d 589 (1966) (citations omitted).

"A floating zone is differentiated from a so-called 'Euclidean' zone, in that while the latter is a specified area defined by boundaries previously determined by the zoning authority, the former have no such defined boundaries and is said to 'float' over the entire area of the district or zone where it may eventually be established." *Bigenho v. Montgomery County Council,* 248 Md. 386, 391, 237 A.2d 53 (1968).

scaping, grading and other necessities to obtain building permits.

The first stage of the Tech Center application approved the development of 400,000 square feet of office space, contingent on the construction of an "upgraded at-grade intersection at Maryland 3/existing Melwood [Belair Drive] entrance." According to appellees, this intersection improvement was not part of the I–68 Project and did not require any public acquisition of appellees' land.

On July 7, 1986, the District Council approved the Tech Center's application for the second phase, the Comprehensive Design Plan, subject to 27 conditions which divided the development into three stages which were each dependent on specific road improvements.[5] All of the conditions had to be met in order for final zoning to be approved.

At this juncture, the parties' characterization of events diverge: the State contends that approval of EIA zoning for the northeast quadrant was dependent upon the project for which appellees' parcel was condemned. Further, the State argues that the adopted and approved Master Plan for Bowie–Collington and Vicinity (October 1970) which was approved as part of the Tech Center's Comprehensive Design Plan showed the intervening ramps which were necessary for the I–68 Project. This is simply not true. The Land Use and Highway Plan map clearly identifies appellees' tract as a "Major Interchange Area," but it does not indicate where the new ramps will be situated. The "Existing Situation" map does show that there are cloverleaf interchanges between Routes 3/301 and 50, but again there is no mention of any existing ramps. Moreover, the Basic Plan for the Tech Center does not mention appellees' land. We agree with appellees that completion of the Tech Center did not require the condemnation of their property.

---

5. Appellees' characterization of the Tech Center as having been zoned EIA on the 1985 Bowie/Collington area map is less than accurate inasmuch as the project had only received second phase approval in 1986.

Appellees prepared a site plan and a development plan for their land based on the EIA zoning of the Tech Center. These plans illustrated the manner in which their parcel could have been developed in a manner consistent with the Tech Center if the I–68 Project did not require its acquisition. The proposed site plan showed that an 88,300–square–foot building could be built with the .3 floor area ratio (FAR) applicable on the EIA-zoned Tech Center. The development plan showed a proposed connector street which would provide access to the appellees' property from the Tech Center. The State disputed the viability of this connector street at trial.

Both the State and appellees had expert witnesses who testified to the fair market value of appellees' parcel as of the stipulated valuation date, February 9, 1987. The State called Melville Peters, a qualified real estate appraisal expert. Peters actually made three appraisals of the property. The first two estimates done in 1984 and 1987 were, however, based on 6.03 acres and the last one done in 1989 was based on the correct number of 6.5 acres. The first valuation was higher because, as Peters explained, he had given the owner "the benefit of the doubt" and considered the lot zoned EIA, whereas in 1989 he appraised the land as zoned R–A. Peters' 1989 value was $136,400 based on information he had which indicated that it was unlikely that the land would be reclassified EIA within a reasonable time.

Appellees countered with their experts. Donald Urquahart, a certified real estate appraiser, testified that the land had a fair market value of $900,000 based on the assumption that rezoning of appellees' land would be "highly probable" if it was compatible with the Tech Center and there was adequate access to the property. Appellees also produced testimony of one of the property owners, Joel Fernebok, who valued the land at $1,250,000 based on its "prominent" location and his assumption that the land would be developed as an office building site.

The State moved for judgment on the issue of probability of rezoning at the close of appellees' case and again at the

close of the entire case. The trial judge denied both motions. The State appeals the inquisition of $500,000.

## REASONABLE PROBABILITY OF REZONING

The crux of the State's argument on appeal is that the trial court erred in ruling that appellees met their burden of showing a "reasonable probability" of rezoning. Consequently, the State argues that the jury should have been excluded from considering that issue in its determination of fair market value.

There are three subparts to the State's argument. Namely, the trial court erred by: (1) allowing hypothetical and abstract questions concerning the probability of rezoning appellees' land in 1982; (2) not requiring appellees to prove both conformity with the master and general plans, and compatibility with the existing and proposed roads; and (3) permitting and failing to strike testimony by appellees' real estate appraisal expert regarding the probability of rezoning. We disagree with the State on all of its points. We explain.

Preliminarily, we need to set forth the legal principles which apply to the instant case. The landowner clearly has the burden of proving the reasonable probability of a rezoning which will increase the value of the land. *State Roads Comm'n v. Warriner*, 211 Md. 480, 491, 128 A.2d 248 (1957); 4 Ziegler, *Rathkopt's The Law of Zoning and Planning* § 52.04 (Release # 13; 6/83); 4 *Nichols on Eminent Domain* § 12C.03[2] (3d ed. 1989). The proving of the existence of a reasonable probability of an imminent change in zoning is a question of fact. *Larry's Enterprises, Ltd. v. Mayor of Baltimore*, 54 Md.App. 367, 373, 458 A.2d 87, *cert. denied* 296 Md. 653 (1983); 4 *Nichols on Eminent Domain* § 12C.03[3].

The trial judge must determine whether the evidence presented sufficiently establishes a reasonable probability of rezoning within a reasonable time after the date of taking. 4 *Nichols on Eminent Domain* § 12C.03[3].

There must, of course, be evidentiary support for the trial judge's decision. But once the judge has determined that there is sufficient evidence of a reasonable probability of rezoning, it is the province of the jury to consider the weight to be given to that testimony. *Larry's Enterprises,* 54 Md.App. at 373, 458 A.2d 87. The trial court should instruct the jury

> "that no element or enhancement of market value could be based upon the mere possibility that at some time in the future a reclassification might occur."

*Warriner,* 211 Md. at 486, 128 A.2d 248. The owners of the tract of land at issue in *Warriner* had attempted to have their residentially-zoned property reclassified as commercial. Two requests for such a change, made nine and five years before the taking respectively, were denied. The Court of Appeals held, "[W]e do not think the evidence as to the possible rezoning was so insubstantial as to require the trial court to instruct the jury to disregard it. Its weight was for the jury." *Warriner,* 211 Md. at 487, 128 A.2d 248. The evidence presented in that case consisted of testimony demonstrating that the area in which the land was located was experiencing "marked expansions" of its commercial area.

According to appellees' brief, the evidence supporting their position that there was a reasonable probability of rezoning included the testimony of Mr. Hirsch, one of the State's witnesses, who was a planning supervisor with the Maryland–National Capital Park and Planning Commission. Mr. Hirsch stated that had the Kamins' property "come in" on the same application with the Tech Center as part of a "total development," it would have been zoned EIA and would have office buildings on their land. Additionally, on cross-examination of appellees' witness, Mr. Yoder, the State asked what would have happened if appellees had submitted an application after the approval of the comprehensive design plan for the Tech Center. Yoder responded that the plan for the Tech Center would simply have needed to be amended. We hold that this testimony, while far from

overwhelming, was not so insubstantial that the trial judge erred in its admission or in allowing the jury to consider it. Further, the trial court's instruction to the jury on the probability of the rezoning issue was proper.[6]

—Hypothetical and Abstract Questions—

The State contends that the trial court erred by permitting hypothetical and abstract questions about the probability of rezoning appellees' land in 1982. The State argues that, since appellees did not own the subject property in 1982 and their predecessors in interest made no attempt to either apply for rezoning or to be included in the Tech Center's 1981 application, the questions were impermissible hypothetical questions.[7]

■ Hypothetical questions are generally allowed and their admission is within the discretion of the trial court. *Williams v. Dawidowicz*, 209 Md. 77, 87, 120 A.2d 399 (1956). These questions must be reasonably thought to help the jury. In addition, the State observes that the Court of Appeals has held:

" '[A] hypothetical question must embrace every material element of the hypothesis founded upon the evidence, and it must not import .into the question any element not founded upon the evidence in the case. If it offends in either respect it is defective and it is error to permit such a question to be answered, and if inadvertently admitted

---

**6.** The text of this instruction is contained, *infra,* in the discussion of the State's Requested Instruction 31.

**7.** Mixed into this theory is the State's premise that Mr. Yoder, one of appellees' expert zoning witnesses who was involved in the Tech Center's 1981 application, testified that appellees' 15–foot right of way on their land could not have satisfied the zoning ordinance's minimum 70–foot access requirement or conformed to the master plan. We address this issue under the discussion of the conformity to the master plan.

Another interesting issue is whether the phrase "reasonable time after taking" limits testimony to the time period after the taking has occurred. The State does not, however, explicitly raise this issue and we leave it for another day.

over an objection, it is error to refuse a motion to strike
out the answer.' "

*Slacum v. Jolley,* 153 Md. 343, 346, 138 A. 244 (1927),
quoting *Northern Central Ry. v. Green,* 112 Md. 487, 505,
76 A. 90 (1910). According to the State, appellees' hypo-
thetical questions did not meet this standard.

*Green* involved a railroad accident where the plaintiff's
expert was asked about the possibility of stopping a train,
like the one involved in the accident, within 250 yards. The
Court observed that the question omitted "any reference to
the speed at which it was shown the train was moving when
the signal of danger was first seen by the engineer."
*Green,* 112 Md. at 505, 76 A. 90. The speed of the train,
according to the Court, was the "most material factor in the
inquiry within what space it can be stopped." *Green,* 112
Md. at 505, 76 A. 90.

We do not question the established principle that a
"hypothetical question must contain all material facts in
evidence essential to the formation of a rational opinion."
*Mullan v. Hacker,* 187 Md. 261, 271, 49 A.2d 640 (1946).
We do, however, question the State's argument that the
questions asked here violated this tenet. We also believe
that *Slacum's* instruction admonishing against the use of
"any element not founded upon the evidence" is too strin-
gent, and if taken literally would rob hypothetical questions
of a great deal of their value.

The hypothetical questions appellees asked of their wit-
ness, Mr. Yoder, regarding the probability of rezoning in
1982 were as follows:

"Q When you filed the application for EIA zoning on
the science and technology center, had the owners of the
Kamins property come to you as the planners and said I
want to file for the same zoning, would you have taken
that case and applied for it?

"[STATE]: Objection. Hypothetical.

"THE COURT: Overruled.

"THE WITNESS: Yes. Assuming it was agreeable to my then existing client. I have to make that qualification.

"BY [APPELLEES' ATTORNEY]:

"Q So you could have planned them both together, could you?

"A Yes.

"Q Now, had you planned them both together would you have provided access to the Kamins property through the Capital Carly property?

"A Yes.

"Q In other words, you would have a road system that made that access possible?

"A Yes. That would certainly make sense, in the overall layout of the Maryland Science and Technology Center, it seems to me that this particular area of the property, the owner of the property could best be served internally from the internal street system serving the science center.

"Q Is there anything unusual about two owners working out their roadways so they all run together?

"A No, it is quite common."

On this same point, appellees' attorney cross-examined one of the State's witnesses, Mr. Hirsch:

"Q My point is, if you were going to develop this whole quadrant of this intersection, 466 acres is already developed EIA zone, you wouldn't leave a six and a half acres out here in no man's land, would you? You would develop it all together?

"A If you would consider it as one development proposal, it is possible, yes.

"Q Now, if Kamins is coming in at the same time the University of Maryland came in for zoning, again, using the mythical assumption that there was no road going to be taking their property, wouldn't it be logical for both applications to be handled the same way at the same time[?]

"[STATE]: Objection.

"THE COURT: He is asking a hypothetical question whether you have an opinion. Whether if one got the zoning, the other one would, is that right?

"[APPELLEES' ATTORNEY]: Yes.

"THE COURT: If you can answer that.

"THE WITNESS: I guess the problem I have in that whole scenario is separating the reality from the myth.

"To the extent that if the Kamins property came in with this original application at that time the area where that subject property was anticipated for roadway improvement, if it had come in, it is my opinion, and included with the subject application, it would have possibly received the same consideration as this property, but would have also been as part of this property solely for highway improvement necessary to support it."

The hypothetical questions at issue in this case are of a very different nature than those in *Slacum* and *Jolley*. There were no omissions of material elements in the questions asked. We do not dispute the fact that these hypothetical questions involved speculation. But some speculation is inevitably involved in all hypothetical questions, and the jury is well aware of this.

Our opinion in *Larry's Enterprises*, is instructive on this issue. In that case, appellant had purchased land which the City later down-zoned from commercial to residential use. Coincidentally, this property was "spot" rezoned in "close proximity to the time the city was preparing to condemn the land." *Larry's Enterprises*, 54 Md.App. at 368, 458 A.2d 87. The land was surrounded by commercial properties and was practically valueless as a residential tract. Judge Lowe, speaking for this Court, analogized the testimony proffered in *Larry's Enterprises* to the testimony presented in *Warriner* and determined that the testimony was "clearly sufficient to have permitted a question of fact for the jury whether there was a reasonable probability of the reclassification." *Larry's Enterprises*, 54 Md.App. at 372, 458 A.2d 87. The testimony in *Larry's Enterprises* was

that there had been a mistake, and that based on the witness's experience he thought there was a reasonable probability, despite the fact that the landowner did not apply for rezoning, that the land would have been rezoned commercial at any time such an application was made. No distinction was made between time before the taking and time after the taking.

The testimony produced in the instant case regarding the reasonable probability of rezoning in 1982 was hypothetical inasmuch as appellees' predecessors in interest had not then applied to have their land rezoned. We disagree with the State that these questions were beyond the bounds of permitted hypothetical questions. We think the questions asked here which included time prior to the actual taking as well as time after the taking were not unlike those at issue in *Larry's Enterprises*. Moreover, it is the function of the jury to weigh the significance of the answers to these hypothetical questions.

—Conformity with Master Plan—

The second prong of the State's first assignment of error is that the trial court erred by not requiring appellees to prove both conformity with the master and general plans, and compatibility with the existing and proposed roads. The State contends that appellees' proposed connector road to the EIA-zoned Tech Center, which was essential to appellees' being able to obtain EIA zoning, was not shown to have met these requirements. Appellees, however, respond that under the State's theory their land could never be rezoned because it was targeted for highway use in the Master Plan.

The parties play off one Maryland zoning case against another. In its reply brief, the State claims "[t]here is no question but that a threshold requirement for approval of a proposed use under the comprehensive design zone is compatibility." *See Floyd v. County Council of Prince George's County*, 55 Md.App. 246, 259, 461 A.2d 76, *cert. denied*, 297 Md. 312 (1983) (where rezoning of the adjacent

Tech Center property was at issue). According to appellees, however, *Floyd* does not apply to this case because it does not take into account the rule evinced in *Carl M. Freeman Associates v. State Roads Commission*, 252 Md. 319, 329, 250 A.2d 250 (1969), that express ordinance standards be set aside to the extent they affect the valuation of property in a condemnation case. We agree with appellees. We explain.

■ The ordinance at issue here is § 27–499 of the Prince George's County Code (1987 ed.). Section 27–499(a)(1)(B) requires that EIA zones be in accordance with the adopted and approved Master Plan. The State claims that the applicable part of this zoning ordinance is § 27–499(3) which states in pertinent part that it is designed to:

> "(3) Assure the compatibility of proposed land uses with existing and proposed surrounding land uses; and existing and proposed public facilities and services...."

This subsection bears on the possible incompatibility of the connector road, given the existence of the ramps which the State maintains are public facilities.

Appellees argue the trial court acted in accordance with the principles laid out in *Freeman*. In *Freeman*, the Court of Appeals determined that the sole purpose of § 111–48f of the Montgomery County Code was to freeze the value of land to be acquired for public purpose. The Court observed:

> "If section 111–48f had other legitimate purposes, *we might solve the matter on a purely evidentiary basis and withhold the application of the ordinance insofar as its affecting the valuation of property is concerned.* To a degree this is done every time a court permits evidence of market value based upon the reasonable probability of a change in zoning classification within the foreseeable future."

*Freeman*, 252 Md. at 329, 250 A.2d 250 (emphasis added). This proposition applies in the case at bar. Moreover, we find the reasoning of *Freeman* compelling. The legitimacy

of the Prince George's County Ordinance at issue here is not disputed. The trial judge withheld the application of the ordinance because to have allowed such application would have effectively foreclosed the landowners from showing any possibility of rezoning to a higher classification. We hold that the trial court's ruling was proper.

We further agree with appellees that the State's argument that the connector road could not have been built because of the "intervening ramps" is fatally flawed. Since these ramps are part of the I–68 Project for which their land was taken appellees argue that the ramps cannot be considered in determining the reasonable probability of rezoning the property to EIA use. A landowner, they claim, should not be penalized when the government strips the land of its highest value. This principle is, basically, the opposite of the settled rule that a landowner cannot profit when land values rise solely because the government creates a market for the property. *Baylin v. State Roads Comm'n*, 300 Md. 1, 20, 475 A.2d 1155 (1984). We agree. The State's contention that the ramps prevent appellees from ever developing their land, is a subterfuge to avoid the well known principle that the State cannot artificially depress the value of land it plans to condemn by rezoning it to a less financially profitable use. *Mayor of Baltimore v. Kelso Corp.*, 281 Md. 514, 520, 380 A.2d 216 (1977). We agree with appellees that the trial court properly excluded evidence concerning the effect of intervening ramps on the reasonable probability of rezoning the property.

### —Real Estate Appraisal Expert—

The State charges the trial court with reversible error for failing to strike the testimony of appellees' real estate appraisal expert, Donald Urquahart, regarding the probability of rezoning. The State's position is that Urquahart was not qualified to give an opinion regarding zoning and his testimony was neither competent nor admissible.

According to the State, Maryland case law requires a witness, who will testify in a specialized area, to be quali-

fied as an expert by virtue of his special training. The witness must demonstrate both possession of the *"necessary qualifications and also the factual information necessary to form such an opinion." Spence v. Wiles,* 255 Md. 98, 102, 257 A.2d 164 (1969) (emphasis in original).

Urquahart testified regarding his qualifications in the following manner:

"A I am a real estate appraiser and consultant.

\* \* \* \* \* \*

"A ... I have a BA degree from Loyola College in Baltimore in business administration. I entered the appraisal profession in 1970.

"I then proceeded, obviously, to learn the appraisal profession, as well as take courses from various institutions of learning with regard to the appraisal of real estate.

"These courses have included ... the principles of real estate, basic procedures and valuation."

It is clear from this testimony that Urquahart's area of expertise is real estate appraisal. Urquahart then described the process involved in his appraisal of appellees' property:

"[F]irst I would make an evaluation of the property and meet with the appropriate individuals, property owners and attorneys, and other [experts] which would assist in the matter.

\* \* \* \* \* \*

"The access of the site is limited due to the fact that there is a right-of-way from 301 about 15 feet wide which would be inadequate generally to service a site other than what its current use was or is at the time that I made the inspection, and that use was as a residential property, zoned RA, rural agricultural.

"However, the appraiser must look a little more in depth at the appraisal problem at hand. In the subject properties [sic] instance it is surrounded by land which is zoned EIA to the north and to the east.

"This land area to the north and east is approximately 466 acres, and it is known as the Maryland Tech and Science Center.

"As an appraiser, I am very familiar with that property, because I have appraised it on at least two occasions.

"One then has to consider the subject's zoning as it stood the day I made the inspection; that is, the zoning RA. Then one must also consider why is that property still zoned RA? Well, the most obvious conclusion is that but for the condemnation by the State Highway Administration the property would have been zoned the same as the 466 acres which a[d]joins the property.

"It would seem incredulous if that would not be the case, since this 6.539 acres represents approximately one percent of 466 acres, and I am sure county zoning authorities would not have left this piece unzoned, or zoned RA, when they zoned the adjacent 466 acres. There is no way that the county, because of its comprehensive zoning procedures—

"[THE STATE]: Objection. I don't think he has been qualified as a zoning expert.

"[APPELLEES' ATTORNEY]: He is giving an opinion, Your Honor. He is an expert in real estate appraisal.

"THE COURT: Overruled. I think he is testifying as to what he based his opinion on."

Shortly thereafter, the court entertained a side-bar conference where the State objected to Urquahart's giving an opinion regarding value because it was based on a subsidiary opinion that the best and highest use of the land would be EIA zoning. The trial judge ruled that, since the State could cross-examine the witness about whether it was probable that EIA zoning would be granted, Urquahart could give his opinion. Urquahart valued appellees' property at $900,000.

The next day, the trial judge, after some consideration, gave the jury the following instruction:

"When Mr. Urquahart testified yesterday ... he said words to the effect that ... 'I think that the Kamins property will be rezoned to EIA'....

"Now, my instruction to you is this: No witness is qualified to testify that a certain piece of land will be rezoned to a different zoning.

"The reason for that is there is a risk in rezoning. What a witness can testify to, and you heard testimony by other witnesses, is they can testify if it is their opinion to a reasonable degree of probability in their opinion, if a rezoning application were made in the reasonably near future that a property would be rezoned to a certain classification.

"So I would like you to ... strike from your mind the portion of Mr. Urquahart's testimony where he said, 'I think that the Kamins property will be rezoned to EIA.' "

The State, however, contends that the court's instruction did not cure the error. In fact, according to the State, the instruction exacerbated the error since it left the jury with the impression that although Urquahart could not say that the property *would* be rezoned, he *could* say it *probably would* be rezoned. Actually, the jury was left with the impression that Urquahart could base his valuation of the property in part on his assessment that there was a reasonable probability that the property would be rezoned to EIA. This instruction was proper and did not constitute error.

 The competency of an expert witness is largely within the discretion of the trial judge and will not be overturned unless this discretion has been abused to the prejudice of the complaining party. *Stickell v. City of Baltimore*, 252 Md. 464, 471, 250 A.2d 541 (1969). The admissibility of expert and opinion testimony has been dealt with by the appellate courts of Maryland on a number of occasions. The specific ability of appraisers to include this sort of testimony was addressed in *Hutchinson v. Baltimore Gas & Electric*, 241 Md. 329, 332, 216 A.2d 573 (1966), where the Court of Appeals approved the practice of allowing appraisers "when valuing property in a condemnation

case, to consider the probability of a tract being rezoned to a higher or lower classification in the reasonably near future." [8] Consequently, such statements are properly admissible.[9]

Moreover, the State cannot argue that permitting Urquahart to testify prejudiced it since the trial court also permitted the State's real estate appraisal expert, Melville Peters, to testify to his belief concerning whether the property had a reasonable probability of being rezoned EIA.

 Finally, we think the State's real objection is that "another person" testified that there was a reasonable probability that the property would be rezoned EIA. Since other witnesses had already so testified, Urquahart's testimony was, at worst, cumulative. Thus, even if the trial court did abuse its discretion, the error was harmless.

---

**8.** A real estate appraiser cannot, however, value the property as if it had already been rezoned to the higher use. *Hutchinson*, 241 Md. at 332.

**9.** Other states have allowed experts in real estate valuation to testify regarding the probability of rezoning:

> "The mere fact that neither appraiser ever sat on a zoning board did not tend to disqualify either of them to testify as to the trends in the area, the best use of the land, and the bases on which each arrived at a decision on valuation. They were both admittedly experts on real estate valuation, and it would reasonably be expected that they would possess the special knowledge of the many factors which would enable them to form an intelligent and fairly accurate estimate of the market value of the land. One such factor is a study of the reasonable probability of a change in a zoning restriction due to trends of which they are cognizant. We are of the opinion that the trial judge erred in striking their testimony from the record."

*0.040 Acres of Land, Etc. v. State,* 57 Del. 173, 198 A.2d 7, 11 (1964) (citations omitted). *See also State ex rel. State Hwy. Comm'n v. Carlson,* 463 S.W.2d 74, 78–79 (Mo.1970) (appraiser is expected to have special knowledge, not only of market value, but of those factors which bear on market value); *O'Neill v. State Dept of Roads,* 174 Neb. 540, 118 N.W.2d 616, 618–19 (1962); *Board of Transp. v. Lyckan Dev. Co.,* 53 N.C.App. 511, 281 S.E.2d 84, 85 (1981) (expert witness may testify to the factors used in arriving at an opinion despite the fact that this evidence would not otherwise be admissible); *Synder v. Commonwealth,* 412 Pa. 15, 192 A.2d 650, 652–53 (1963).

## JURY INSTRUCTIONS

The State charges the trial court with reversible error for failing to give its requested jury instructions which it contends accurately stated the law and were supported by the evidence. Specifically, the State excepted to the court's failure to give requested instructions 23 and 31 through 36.

### —State Requested Instruction 23—

 The State requested the trial court to instruct the jury that "under the law of Maryland a comparable sale is in and of itself evidence of value which you may consider in arriving at your verdict in this matter." The State maintains that this instruction is consistent with Maryland case law. *See State Roads Comm'n v. Parker,* 275 Md. 651, 686, 344 A.2d 109 (1975). In *Parker,* appellant contended that the trial court erred by not instructing the jury in part, "You are to determine the comparability of market sales offered in evidence in support of opinion testimony or as independent evidence of value." The State omits, however, the fact that the *Parker* Court rejected an instruction like the one it submitted on the grounds that it "did not fully state the law" and "would have done nothing in assisting the jury in connection with the evidence submitted to it of comparable sales." *Parker,* 275 Md. at 687, 344 A.2d 109. The Court determined that a more precise statement of the principles would read as follows:

> "It is settled law in this State that evidence of the price for which similar property in the vicinity has actually been sold may be used as *primary* evidence of the value of the property taken *or in support of and as background for* the opinion of an expert testifying as to the value of the property, *or both.*" (Emphasis in original.)

*Parker,* 275 Md. at 686, 344 A.2d 109, citing *State Roads Comm'n v. Wyvill,* 244 Md. 163, 172, 223 A.2d 146 (1966), *State Roads Comm'n v. Adams,* 238 Md. 371, 378, 209 A.2d 247 (1965), and *State Roads Comm'n v. Halle,* 228 Md. 24, 32, 178 A.2d 319 (1962).

As was the case in *Parker,* the instruction submitted by the State did not precisely state the law and would have emphasized one aspect of valuation. Finally, in addition to instructing the jury to consider all of the evidence, the trial court did not state or even suggest that the jury should not consider the comparable sales testimony as evidence of value of the subject property.

—State's Requested Instruction 31—

The State's proposed Instruction 31 reads as follows: "No element or enhancement of market value can be based upon the mere possibility that at some time in the future a reclassification can or might occur." In fact, the trial judge instructed the jury on this issue in the following manner:

"In a condemnation case, evidence of a reasonable probability of a change in the zoning classification within a reasonable time may[ ]be considered by you. However, if the probability of rezoning is due to the proposed public improvements, you may not consider it.

"What that means in the context of this case is simply this. If the EIA zoning contended for by the [appellees] would not have occurred but for the proposed public improvement by the State Highway Administration, you may not consider market value based upon the property's value with EIA zoning, because you must exclude from your judgment of value any increase in value caused by the public project.

"On the other hand, if you decide without the proposed public improvement by the State Highway Administration the [appellees] had a reasonable probability of a change to EIA zoning within any reasonable time, then you may take this fact into consideration in making your award.

"You are instructed that the burden of proving a reasonable probability of rezoning to EIA within the foreseeable future—the term 'probability' means that something is more likely to happen than not.

"If you believe that the evidence is evenly balanced on the issue of probability of rezoning to EIA, then your finding on that issue must be against the party who has the burden of proving it, i.e., the [appellees]."

We hold that the State's requested instruction was "fairly covered" by the instruction actually given, and in accordance with Rule 2–520(c), the court did not err in refusing to grant the State's request.

## —Requested Instructions 32 through 35—

The State contends that instructions 32 through 35 [10] should have been given as they accurately state the law applicable to the review and approval of comprehensive design zones in Prince George's County. According to the State, this case turned on a proper understanding and application of this law and the ordinance. The State even goes so far as to assert that "[h]ad the court presented the jury with these rules, it is possible the jury would have realized the court's error and come to the conclusion independently that there was no reasonable probability of rezon-

---

**10.** The text of the instructions was as follows:

"32. A Comprehensive Design Zone under the Prince George's County Zoning Ordinance is accomplished in three phases:

"a. First, a Basic Plan which must be approved by the Prince George's County Council;

"b. Secondly, a Comprehensive Design Plan which must be in accordance with the approved Basic Plan and is again subject to approval by the Prince George's County Council;

"c. Lastly, a Specific Design Plan for individual sites within the Comprehensive Design Plan. Again it must be in accordance with the Basic Plan and the Comprehensive Design Plan and it too is subject to the approval of the Prince George's County Council.

"33. With regard to what is known as EIA Zoning it is a Comprehensive Design Zone, it is not a matter of right but is within the discretion of the Prince George's County Council.

"34. Among other things required to be shown, to be considered for approval of EIA Zoning an application [sic] must show that his Plan is in accordance with the adopted and approved General Plan and the Master Plan.

"35. In addition, the applicant's plan must assure the compatibility of his proposed land uses not only with the existing and proposed surrounding land uses but also with existing and proposed public facilities including roads whether they be County or State."

ing." Appellees respond that the trial court did not err in its interpretation of the applicable law and that the court's instructions quoted above adequately covered the operative law.

We analyze these instructions in light of the general rule that the instruction must correctly state the law and be supported by the evidence. In the instant case, the first prong was not satisfied. These instructions do not accurately state the law regarding the reasonable probability of rezoning which the court adequately gave, as quoted above in the "Instruction 31" discussion.

—Requested Instruction 36—

The State's proposed Instruction 36 stated:

"36. If you find that an application by the [appellees] was not compatible with existing and proposed roads or with the General or Master Plans you must find his request for rezoning to EIA could not be granted."

The State claims that this is a proper statement of the law as enunciated in *Floyd* and in the relevant Prince George's County ordinances, and is supported by the testimony of both Hirsch and Yoder.

Appellees respond that this instruction misstates Maryland law as established in the *Freeman* case. We agree with appellees and hold that the trial court properly refused to give this jury instruction. We have already addressed this issue in our discussion of the compatibility with the Master Plan.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY STATE ROADS COMMISSION OF THE STATE HIGHWAY ADMINISTRATION.